[Crim. No. 17900. In Bank. Mar. 4, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH ROBERT COOK et al., Defendants and Appellants.

664

**COUNSEL**

Keith C. Monroe, James D. Riddet, Lawton, Christensen, Fazio, McDonnell, Briggs & Ward and Michael R. McDonnell for Defendants and Appellants.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Arnold O. Overoye and Robert D. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WRIGHT, C. J.**—Defendants, Joseph Robert Cook and Rodney Turner Ellis, individually appeal from an order granting probation to each defendant following his conviction in a joint nonjury trial on an information charging violations of Health and Safety Code section 11530.5 (possession of marijuana for sale, now Health & Saf. Code, § 11359).[1] Defendants contend first, that an odor of marijuana detected by

---

[1]Defendants individually purport to appeal from the "judgment." Following court findings of guilt and upon arraignment for sentencing, the court suspended the imposition of sentence, granted a motion for probation and fixed the term thereof at five

police officers when they stopped the automobile of defendants for a traffic violation did not constitute probable cause for their arrest and the contemporaneous search of the vehicle and, second, that their joint representation by retained counsel at trial raised conflicts of interest which denied to each of them the constitutional right to be represented by effective counsel.[2] We conclude, for the reasons which follow, that defendants are entitled to no relief.

Sometime after 3 a.m. Highway Patrol Officers Walker and McCoy observed an automobile traveling at an excessive rate of speed on a state highway. The driver of the car, defendant Ellis, responded to the officers' signal to stop, left his car and walked back to the patrol car. Officer McCoy, who testified to a long familiarity with the smell of marijuana, detected a strong odor of such material in the immediate area of Ellis. The officer then went to the passenger side of the stopped vehicle and motioned for defendant Cook to open the window on that side of the car. When Cook complied the officer detected a strong odor of fresh marijuana emanating from inside the automobile.

Officer McCoy reported to defendant Ellis that he detected the odor of marijuana originating from inside the car and asked for permission to conduct a search of the car. Ellis refused. The officer advised him that nevertheless he would conduct a search and proceeded to do so. On the back seat he found a brief case containing incense punks, a small brass screen and a small box in which marijuana debris was present.[3] On the passenger side of the front-seat console he found a smoking pipe which smelled of burned marijuana and he also discovered marijuana seeds on the floorboard immediately adjacent to the front seat.

years as to each defendant. Among the conditions of probation each defendant was required to serve a six-month term in the county jail and to pay a $1,000 fine. The court then stayed execution of its order upon the posting of bond on appeal. The order granting probation is "deemed to be" a final judgment for the limited purpose of an appeal therefrom. (Pen. Code, § 1237, subd. 1; *People* v. *Superior Court (Giron)* (1974) 11 Cal.3d 793 [114 Cal.Rptr. 596, 523 P.2d 636].)

[2]Defendants were represented by the same retained counsel both at trial and initially on appeal. Such counsel in behalf of defendants raised on appeal only the first of the two issues now before us. The Court of Appeal first rejected the ground thus asserted and affirmed the order granting probation. Thereafter each defendant retained a different, individual counsel and each counsel on petition for rehearing urged that because of a conflict of interest his client had been denied effective assistance of counsel at trial. After further proceedings on rehearing in the Court of Appeal we granted a petition for hearing and the issues thus raised jointly and by the individually retained counsel are now before us.

[3]The officer also testified that, based on his prior experiences, the burning of incense is often used to cover the aroma of marijuana and that a brass screen is frequently used to hold marijuana in the bowl of a pipe when it is ignited.

Because the odor was much stronger than that which could be attributed to the materials he had discovered, Officer McCoy decided to search the trunk of the automobile. Discovering that the ignition key did not fit the trunk lock and that neither defendant would respond to a request for the proper key, Officer McCoy pried open the lid to the trunk. During this process defendant Cook became very upset, pacing back and forth and contending that the officer had no right to search the rear compartment of the car. Officer McCoy discovered five plastic bags in the trunk each of which contained approximately a pound of marijuana. He also located a number of similar bags each containing smaller amounts of the contraband.

The record fails to disclose the nature of the relationship between defendants, if any, other than that the automobile in which the contraband was found was leased to and driven by Ellis and that Cook was a passenger therein. Neither defendant sought to explain his presence or the presence of the contraband in the car nor did either incriminate the other as being responsible for that contraband.

■ In challenging the propriety of the search and seizure defendants claim that the odor of unburned marijuana did not furnish probable cause to search the car. We rejected a similar contention in *People* v. *Gale* (1973) 9 Cal.3d 788 [108 Cal.Rptr. 852, 511 P.2d 1204]. In that case we held that a police officer having made a lawful entry into an automobile could rely on a strong aroma of fresh marijuana as giving him " 'probable cause to believe . . . that contraband may be present.' (*People* v. *Marshall, supra,* 69 Cal.2d 51, 57, fn. 2.) Inasmuch as the contraband was apparently located not in a dwelling but in an automobile parked in a public lot—unlocked, accessible, and readily movable—the same probable cause would have justified the subsequent search of [the] vehicle under the rationale of *Carroll* v. *United States,* 267 U.S. 132 . . . and its progeny." (*People* v. *Gale, supra,* 9 Cal.3d 788, 794.)[4]

---

[4]We note that *Marshall,* cited in the quoted passage in *Gale,* was relied upon by defendants in support of their contention that the officers lacked probable cause to search their car. *Marshall,* however, involved the search of a dwelling and the court expressly distinguished such conduct from the search of a vehicle. (69 Cal.2d at p. 61.) Although recognizing that contraband was present, the majority held that such a belief was not sufficient to justify a warrantless search for evidence which despite its distinctive odor was not in plain view.

Insofar as *Marshall* prohibited a *seizure* of evidence within a dwelling which would have been deemed permissible if present in a vehicle, such case is no longer the law of this state. In *Guidi* v. *Superior Court* (1973) 10 Cal.3d 1 [109 Cal.Rptr. 684, 513 P.2d 908], we held that a visible bag from which a recognizable odor of contraband was emanating could in the particular circumstances of that case lawfully be seized without a warrant

In the instant case the search was conducted between 3 and 4 a.m. on a remote section of an interstate highway. The nearest town or city where a magistrate might be located was approximately 25 miles away. If an attempt to impound the car had been made, the officers would have been presented with security problems not only with respect to maintaining custody over the two defendants but with respect to the vehicle itself. In addition there was the risk of a possible break in the chain of possession of the contraband, the presence of which Officer McCoy clearly detected from the instant of his initial stopping of the car. Reason and good police procedure dictated that if the officers were to preserve the evidence of illegal activity which their investigations had uncovered, an on-the-scene search of the vehicle was mandated.

In *People* v. *Dumas* (1973) 9 Cal.3d 871 [109 Cal.Rptr. 304, 512 P.2d 1208], we stated that officers are empowered under the *Carroll* doctrine to search an automobile as "long as it can be demonstrated that (1) exigent circumstances rendered the obtaining of a warrant an impossible or impractical alternative, and (2) probable cause existed for the search." (*Id.,* at p. 884, see also concurring opn. by Sullivan, J., at p. 886, fn. 1; see also *Chambers* v. *Maroney* (1970) 399 U.S. 42, 52 [26 L.Ed.2d 419, 428-429, 90 S.Ct. 1975]; *People* v. *Laursen* (1972) 8 Cal.3d 192, 201 [104 Cal.Rptr. 425, 501 P.2d 1145].) It is manifest in the instant case that exigent circumstances were clearly present and that there was no practical alternative to an on-the-scene search of the vehicle. Probable cause to believe that the car contained contraband having been established without infringing any of defendants' constitutional rights,[5]

and that incident to such a seizure the bag could be searched. All members of the court agreed that *Marshall* was indistinguishable on its facts from *Guidi.* Despite differences in the language of the three justices who joined in the opinion of the court and the language of the four concurring justices (compare 10 Cal.3d, at p. 17, fn. 18, with *id.,* at pp. 19-20 (concurring opn.)), it is clear that the result in *Guidi* was a *pro tanto* overruling of *Marshall* as to the particular issue.

It is thus apparent that *Marshall* never disputed the proposition that the sense of smell could establish probable cause for a belief that contraband was present and provides no authoritative support for the contention of defendants in the instant case that the officers lacked probable cause.

[5]Our reliance on *Gale* for the proposition that an odor of marijuana may establish probable cause to believe that contraband is present does not relate to other issues in *Gale.* Three justices dissented on the ground that police officers had made an illegal entry into the vehicle itself (see dissenting opn. of Mosk, J., joined by Tobriner, J. and Sullivan, J., 9 Cal.3d at p. 799) and once inside the car were not legally entitled to rely on their sense of smell to ferret out the contraband. On the other hand, in the instant case the strong odor of marijuana was detected *prior* to the entry into the car and probable cause was established without any question of previous infringement of defendants' rights. There was no dissent in *Gale* on the proposition for which it is quoted herein, that probable cause to believe contraband is present may be grounded upon the detection of the distinctive odor of marijuana.

the officers would have been remiss in their duties had they not undertaken an immediate search.

■ There is likewise no merit in defendants' further contention that the scope of the search exceeded permissible limits. The record clearly establishes that the officers had probable cause to believe that the trunk compartment contained marijuana; thus, they were entitled to search it. (*People* v. *Laursen, supra,* 8 Cal.3d 192, 197, 201; see also *Guidi* v. *Superior Court, supra,* 10 Cal.3d 1, 15-19.) As determined by the United States Supreme Court, the scope of a permissible search where there is probable cause to believe that a vehicle contains contraband is not limited by the rules circumscribing the scope of a search incident to a contemporaneous arrest. (See *Chambers* v. *Maroney, supra,* 399 U.S. 42.)

We next deal with the contentions urged individually by defendants that because they were jointly represented at trial by the same attorney, such counsel could not adequately defend either without prejudice to the other; therefore, it is alleged, each was denied his constitutional right to effective assistance of counsel. ■ A debilitating conflict of interest exists, inter alia, when the defenses of codefendants are factually inconsistent. (*People* v. *Chacon* (1968) ·69 Cal.2d 765, 775-776 [73 Cal.Rptr. 10, 447 P.2d 106, 34 A.L.R.3d 454]; *People* v. *Thompson* (1970) 13 Cal.App.3d 47, 55 [91 Cal.Rptr. 341]; *People* v. *Odom* (1965) 236 Cal.App.2d 876, 878 [46 Cal.Rptr. 453].) When codefendants who have possible conflicting interests are jointly represented at trial such counsel may be inhibited from producing evidence or from arguing matters or by objecting to the introduction of evidence which may be exculpatory as to one of his clients because such a course may be prejudicial to another of the codefendants. The very failure to produce or emphasize such information, moreover, produces a void and results in a record which shields the fact of any possible conflict and makes it difficult to demonstrate on appeal that a conflict did in fact exist. (*People* v. *Chacon, supra,* 69 Cal.2d 765, 775.) Accordingly, a codefendant claiming he was denied effective assistance of counsel ordinarily need not establish that there was an actual conflict of interest, but rather it is sufficient if the record provides an adequate basis for an "informed speculation" that there was a potential conflict of interest which prejudicially affected the defendant's right to effective counsel. (*Id.,* at pp. 775, 776, fn. 3; *People* v. *Thompson, supra,* 13 Cal.App.3d 47, 57; *People* v. *Gallardo* (1969) 269 Cal.App.2d 86, 89 [74 Cal.Rptr. 572].)

■ Permissible speculation giving rise to a conflict of interest may be

deemed an informed speculation but only when such is grounded on a factual basis which can be found in the record. That basis must consist of something more than evidence which merely establishes the commission of and the codefendants' possible participation in the crime or crimes. Thus, in the instant case the mere fact that the car from which the contraband was seized was leased to and was operated by defendant Ellis is a factor which clearly connects him to the commission of the crime but such in itself does not demonstrate the existence of a conflict of interest with the defendant Cook as would prejudice the latter's defense. Likewise the fact that the conduct of defendant Cook at the time the officers were opening the lid to the car trunk, although raising inferences of his guilty knowledge of the unlawful possession of the contraband does not in and of itself suggest a conflict of interest with defendant Ellis such as would prejudice the latter's defense.

Defendants thus have not articulated any facts indicating a conflict of interest based on matters which appear in the record supporting their claim that because of such alleged conflict joint counsel could not render effective assistance. ■ However, assuming arguendo that such a conflict could be established and that trial counsel's representation was therefore ineffective,[6] we are confronted with the serious question of whether either defendant is entitled to relief by reason of the particular circumstances of this case.

The circumstance to which our attention is particularly directed is the fact that trial counsel now alleged to have been inadequate was privately retained by defendants. ■ When a trial court undertakes to appoint counsel for indigent codefendants (see *People* v. *Chacon, supra,* 69 Cal.2d 765), it must assume the burden of assuring that its appointment does not result in a denial of effective counsel because of some possible conflict. (*People* v. *Shipstead* (1971) 19 Cal.App.3d 58, 79 [96 Cal.Rptr. 513]; *People* v. *McGowan* (1969) 269 Cal.App.2d 740, 745 [75 Cal.Rptr. 53].) On the other hand, when multiple defendants freely and voluntarily retain joint counsel the court is not required to assume a similar burden. Indeed, it is extremely doubtful that defendants' right to retain counsel

---

[6]Defendants' claim of a conflict, insofar as we are able to ascertain, must be premised on a recognition that on the particular facts presented to the trial court it could have found that one but not necessarily both defendants were in possession of marijuana and further that each defendant was aware of the presence of the contraband. Such a factual context, it is urged, warrants a speculation (e.g., an "informed speculation") that if either defendant was to assert a tenable defense he could realistically do so only by strong inferences that the other was responsible for the presence of the contraband.

of their own choice could or should be challenged by the trial court.[7] (See *United States* v. *Paz-Sierra* (2d Cir. 1966) 367 F.2d 930, 932.)

In *People* v. *Chacon, supra,* 69 Cal.2d 765 we granted relief and refused to engage in " 'nice calculations as to the amount of prejudice' " arising from the denial of the assistance of counsel where the *court* had the burden of ascertaining a conflict of interest confronting a jointly appointed counsel. (*Id.,* at pp. 775-777.) However, we recognized there that a showing of prejudice was nevertheless essential to a grant of relief. (*Id.,* at p. 776, fn. 3.) Unlike the situation in *Chacon* the failure in the instant case to have each defendant represented by separate counsel cannot be attributed to any default on the part of the court. The question whether defendants should have had separate counsel was one which was properly addressed to and considered by, or should have been considered by, defendants and jointly retained counsel. If counsel failed to bring such matters to the attention of defendants, or if he failed thereafter to properly advise them after he made them aware of the possibilities of a conflict, such default was attributable solely to counsel. Accordingly, whether defendants are entitled to relief must be measured against the same standard as in other instances of alleged incompetency or inadequacy of trial counsel.[8] (See *People* v. *Ibarra* (1963) 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487].)

■ Before a judgment may be reversed by reason of inadequacy of trial counsel it must appear from the record "that counsel's lack of diligence or competence reduced the trial to a 'farce or a sham,' " within the meaning of *People* v. *Ibarra, supra,* 60 Cal.2d 460, 464-466 (see also *People* v. *Shipstead, supra,* 19 Cal.App.3d 58, 80; *People* v. *McGowan, supra,* 269 Cal.App.2d 740, 745) or that he did not effectively supply to a defendant those skills and legal knowledge which we can reasonably

[7]An inquiry as to whether there were conflicting interests would seem particularly inappropriate in the instant case where the court was also the trier of fact. Obviously the court could not determine the existence of a possible conflict without possession of particular knowledge which defendants in assertion of their rights against self-incrimination and declination to testify might elect not to disclose. We nevertheless believe that it would not be inappropriate for a trial court to indicate to codefendants represented by counsel jointly retained that if a conflict exists each might be better represented by separate counsel. Such admonishment following an inquiry as to whether defendants and their jointly retained counsel have considered the possible damaging effect of a potential conflict is highly recommended as appropriate trial court procedure.

[8]If the question of a conflict of interest had been presented to the trial court by either of the defendants the *Chacon* measure of relief would be applicable if it appeared on appeal that because of the conflict set forth in the record such defendant should have been entitled to representation by separate counsel either by employment of an individual attorney of his own choosing or, in an appropriate case, by appointment by the court.

expect from any member of the bar. In the instant case the conduct of the trial as to neither defendant was inadequate under *Ibarra* standards. Insofar as the record before this court discloses counsel pursued the only realistic defense which was available.[9] Although other defenses raising a conflict of interest may have been possible the record permits us only to speculate as to such defenses. We cannot determine that there has been a withdrawal of any crucial defense or defenses by reason of such alleged inadequacy of counsel. (*People* v. *Ibarra, supra,* 60 Cal.2d 460, 464.) Nor can we speculate that the pursuit of a single defense as to both defendants was other than a matter of considered trial strategy dictated by the circumstances of the case. Indeed, in view of the overwhelming evidence produced against defendants at trial, it is doubtful if any defense other than the challenge to the legality of the search and seizure could reasonably have been considered as tenable. Such does not constitute a failure on the part of counsel.[10]

We are, of course, bound on an appeal by factual matters which appear in the record. Our conclusion herein, that there has been no showing that by reason of the joint representation a crucial defense was withdrawn as to either defendant, is dictated by an examination of the record which is before us. We cannot reasonably reach any other conclusion.

The order granting probation is affirmed as to each defendant.

McComb, J., Tobriner, J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

Appellants' petition for a rehearing was denied April 2, 1975.

---

[9]Counsel moved to suppress the evidence in the trial court (Pen. Code, § 1538.5). When the motion was denied he then sought relief by filing and pursuing a petition for a writ of prohibition which was denied. Although we disagree with counsel's contention that the evidence should have been suppressed, such disagreement is not indicative of counsel's adequacy or effectiveness in view of the circumstances in this case.

[10]A rule which mandated granting of relief on a mere showing of the possibility of a conflict of interest and presumed prejudice therefrom would afford to defendants jointly charged and represented by a single retained counsel, an automatic right to reversal on appeal should the defense or defenses at trial fail. "Where codefendants choose to be represented by one attorney, make no objection to that representation or request they be allowed to secure separate counsel at trial, they, as with invited error, may not raise the issue on appeal absent a showing the trial was reduced to a farce or a sham. This is the appellate burden of one claiming inadequate legal representation [citations]. To hold otherwise would allow criminal defendants to create appellate issues by exercising their undoubted right to counsel of their choice." (*People* v. *McGowan, supra,* 269 Cal.App.2d 740, 745.)