[Crim. No. 10793. Third Dist. June 29, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES BURTON BAKER et al., Defendants and Appellants.

**COUNSEL**

Ann Kanter, under appointment by the Court of Appeal, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney

General, James T. McNally and Thomas R. Yanger, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PARAS, J.**—Defendants appeal from judgments entered after a jury found them each guilty of auto theft (Veh. Code, § 10851) and receiving stolen property (Pen. Code, § 496). James Baker was sentenced to 16 months in prison. Becky Baker was placed on probation and ordered to participate in an alternative sentencing program for 100 hours.

Defendants' sole claim of error is in the trial court's denial of their motion to suppress evidence obtained during the warrantless search and seizure of the stolen automobile in their front yard parking lot. They contend the officer had no probable cause to search the vehicle and no exigent circumstances existed to justify it. We disagree and affirm.

The suppression motion was submitted to the trial court on the transcript of the preliminary hearing. Testimony at that proceeding established that Andrew Beach's restored $5,000, 1948 Willys Jeepster was stolen from his "Advanced Muffler Services" shop on the weekend of April 17, 1978. About a month later, a State Forestry employee reported a conversation he had overheard three weeks earlier to John Parkinson, a California Highway Patrol vehicle theft investigator. The forester told Parkinson he had heard two men in a bar discussing two subjects, the theft of the Jeepster and a car stealing and stripping operation conducted in Rio Linda on property surrounded by chicken coops. He described one of the men as 5 feet 10 inches tall, 200 pounds, under 30 years old, with medium length hair. Parkinson called Beach and obtained photographs of and information on the stolen Jeepster.

On or about August 23 the Sacramento police informed Parkinson that a James Baker (one of the defendants) had called and reported sighting a Jeepster that matched the description of the Beach stolen vehicle on Highway 20 between Clear Lake and Williams. Highway Patrol and sheriff's officers went there but found nothing in the area. Parkinson ran a Department of Motor Vehicles (DMV) check on Baker and found the description the forester had given him generally matched the one on Baker's driver's license, although there was a discrepancy in weight. He decided to drive past the Baker address whenever he was in

the area, and so informed Beach. Beach asked if he could do the same thing and Parkinson agreed; he told Beach to call if he saw his vehicle there.

In September or October 1978, Parkinson noted a junk Jeepster on a trailer parked on the Baker property. DMV documents disclosed the Bakers had purchased it on April 18, 1978 (the day after the theft), at which time a certification of nonoperation was on file. When the registration process was completed, however, the Bakers requested and were issued license plates for it as an operable vehicle. Parkinson's experience indicated to him that it was common practice for car thieves to switch vehicle identification numbers from "cold" junked cars to "hot" stolen cars to conceal the theft.

On May 30, 1979, Beach called Parkinson and reported that he saw his repainted Jeepster parked in Baker's front yard. Parkinson drove by at about 10 a.m. and also saw the vehicle, which displayed license plates issued to the junk Jeepster. After calling the district attorney's office and getting clearance to enter the Baker property and the vehicle without a warrant, Parkinson entered the yard at about 11 a.m. (without a warrant). He knocked on the door and told defendant Becky Lynn Baker he had reason to suspect the Jeepster was stolen and was about to inspect it. He then raised the hood on the vehicle and found that the engine number appeared to have been filed away and a new number stamped in its place. After a detour into the side yard to check the junked vehicle (the results of which were later suppressed by the trial court), Parkinson called Beach who met him at the Baker property and indicated further identifying particulars on his Jeepster. Parkinson checked the vehicle more thoroughly then had it towed away.

Defendants' contention of lack of probable cause for the vehicle's search and seizure must fail in light of the facts recited above. ■ Probable cause to conduct a warrantless automobile search exists where an officer is aware of facts that would lead a man of ordinary caution and prudence to believe and conscientiously entertain a strong suspicion that the object of the search is in the particular place to be searched. (*Cleaver v. Superior Court* (1979) 24 Cal.3d 297, 308 [155 Cal.Rptr. 559, 594 P.2d 984].) The reported conversation, Baker's phone call, the junk Jeepster, and Beach's preliminary identification of the vehicle were such facts.

■ Contrary to defendants' contentions, Parkinson was not obliged to obtain a search warrant before entering the property or searching the vehicle for identifying numbers or features. Given probable cause, there is no constitutional difference between immobilization of an automobile pending issuance of a search warrant (as defendants insist Parkinson should have done) and an immediate search. (*Chambers* v. *Maroney* (1970) 399 U.S. 42, 52 [26 L.Ed.2d 419, 428, 90 S.Ct. 1975]; see *People* v. *Minjares* (1979) 24 Cal.3d 410, 418 [153 Cal.Rptr. 224, 591 P.2d 514]; *People* v. *Superior Court* (*Rhinehart*) (1980) 114 Cal.App. 3d 264, 269 [170 Cal.Rptr. 639].) The sudden appearance of the Jeepster at the Baker residence and its apparent operative condition supplied the necessary exigent circumstances for the application of the automobile exception to the search of the engine and passenger compartments. (See *People* v. *Dumas* (1973) 9 Cal.3d 871, 884 [109 Cal.Rptr. 304, 512 P.2d 1208]; *People* v. *Cook* (1975) 13 Cal.3d 663, 669 [119 Cal.Rptr. 500, 532 P.2d 148]; compare *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443 [29 L.Ed.2d 564, 91 S.Ct. 2022].) Defendants' use of their unfenced front yard as a parking lot precludes any serious claim that Parkinson violated their reasonable privacy expectations when he entered to look at the vehicle; it also precludes their reliance on cases involving searches of luggage found in automobile trunks (e.g., *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476]]; *Arkansas* v. *Sanders* (1979) 442 U.S. 753 [61 L.Ed.2d 235, 99 S.Ct. 2586].) Moreover, it was not defendants' vehicle that was searched, but the vehicle of Beach. As stated in the People's brief, "not even California approves the assertion of this 'vicarious exclusionary rule' [*Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150 (98 Cal.Rptr. 649, 491 P.2d 1]] when the officer's actions do not infringe a third parties' right to privacy but protect and vindicate those rights." (*People* v. *Solario* (1977) 19 Cal.3d 760, 764 [139 Cal.Rptr. 725, 566 P.2d 627]; *People* v. *Cook* (1977) 69 Cal.App.3d 686, 690 [138 Cal.Rptr. 263].)

The judgments are affirmed.

Puglia, P. J., and Carr, J., concurred.