[No. H000359. Sixth Dist. Apr. 18, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
ORALIA AMAYA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part IV.

COUNSEL

Michael L. Pinkerton and Allen R. Crown for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Ronald E. Niver, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

AGLIANO, P. J.—A jury found defendant Oralia Amaya guilty of a sale of heroin in violation of Health and Safety Code section 11352. She appeals from the resulting judgment, attacking, on the ground of ineffective assistance of counsel, the validity of her prior conviction of possession for sale of a half-ounce or more of heroin (Health & Saf. Code, § 11351) and also its admission into evidence to impeach her. We explain below why we find no prejudicial error and affirm the judgment.

II

*Chronology*

The record discloses that defendant and her husband, Sammy Amaya, were codefendants in an earlier 1979 case charging them with possessing a half-ounce or more of heroin for sale. They were jointly represented by one attorney and pled guilty on March 5, 1979. Subsequently on May 11, 1979, each was sentenced to prison for the middle term of three years.

The instant offense occurred on June 6, 1983. San Jose City Police Officer Walter Tibbet was engaged in conducting undercover narcotics purchases and had previously bought heroin from defendant's husband a couple of times. During the evening on June 6, he telephoned defendant's residence and asked for Sammy when a woman answered. She explained Sammy would return in 15 minutes and asked what he wanted. He answered a "half," slang for about four-tenths of a gram of heroin, a common, small, usable amount. She directed him to call back from a certain supermarket in San Jose. He called again within the hour, a woman again answered and put Sammy on the line at the officer's request. He asked Sammy for a half, and Sammy told him if he waited by the supermarket, somebody would bring it by in Sammy's black pickup truck.

It was still light out around 7 p.m. when the officer, after waiting for about 15 minutes by public telephones, spotted the truck entering the park-

ing lot. The officer recognized Sammy as the driver and, for the first time, saw defendant as the passenger. The truck stopped with the officer near the passenger's side, so he approached that window, observing defendant was holding a small balloon which contained heroin. In a quick transaction, he handed her $30 and she handed him the balloon. During this exchange, he noticed needle marks on her arm. Two days later he got a better look at her while executing a search warrant at their residence.

On June 28, 1983, a complaint was filed charging defendant and her husband, Sammy, with sale of heroin. On May 21, 1984, an information was filed, containing the same charge and alleging the prior conviction and prison term described above. The prior conviction was alleged to disqualify her from probation eligibility (Health & Saf. Code, § 11370, subd. (c)) and the prior prison term was alleged as an enhancement under Penal Code section 667.5.

On July 16, 1984, defendant filed a motion to strike her prior conviction on the ground of ineffective assistance of counsel. The motion was denied.

On October 3, 1984, at the outset of trial, defendant made a motion *in limine* to exclude as impeachment evidence her prior conviction, which motion was denied. Defendant thereupon admitted her prior conviction and prison term outside the presence of the jury.

At trial Officer Tibbet described the heroin sale as set out above. Defendant testified, acknowledging her prior conviction. Her testimony was: On June 6, 1983, she was residing with Sammy, her husband of some 17 years. He was then using and selling heroin; she was then using, but she denied selling. She was with her husband all day and was in the truck at the supermarket, but she went there to shop for food. She did not remember selling heroin to the officer that day.

Sammy also testified, stating: He sold the officer the heroin on June 6, as he had twice before. He could not recall if his wife accompanied him to the market that day, but he denied involving her in sales. The Amayas both explained they subsequently had separated.

Following her conviction, defendant was sentenced to five years in prison, including a one-year enhancement, but sentence was suspended so she could receive treatment for heroin addiction pursuant to Welfare and Institutions Code section 3051. This appeal followed.

III

*Defendant's Motion to Strike Her Prior Conviction Based on
Inadequate Assistance of Counsel by Virtue of Joint Representation
Was Properly Denied*

■ There is no question defendant was entitled to collaterally attack her alleged prior conviction by a pretrial motion to strike. ■ " 'To the extent that any State makes its penal sanctions depend in part on the fact of prior convictions . . . necessarily it must assume the burden of meeting attacks on the constitutionality of such prior convictions.' [Citations.]" (*People* v. *Coffey* (1967) 67 Cal.2d 204, 215 [60 Cal.Rptr. 457, 430 P.2d 15]; accord, *People* v. *Sumstine* (1984) 36 Cal.3d 909, 914-919 [206 Cal.Rptr. 707, 687 P.2d 904].) *Coffey* spells out the procedure for such an attack. (*Id.,* at pp. 217-218.) Once a constitutional defect is adequately alleged, the prosecution must demonstrate the existence of the prior conviction. Then the defendant has the burden of establishing the constitutional deprivation, while the prosecution has the right of rebuttal.

Defendant claimed ineffective assistance of counsel in her 1979 case because her attorney jointly represented her codefendant husband. The record shows they were represented at the change of plea hearing on March 5, 1979 by Daniel Hernandez, whom they had retained.

The court recognized they were husband and wife and discussed with each of them the constitutional rights they waived by pleading guilty. The court determined their attorney consented to the change of plea after adequate discussions with his clients, and then the following colloquy occurred:

"The Court: Mr. Hernandez, you represent both of these clients on the same charge and with the same allegations. I don't know whether or not there is a possibility of a conflict in this matter, and you, of course, have investigated it fully and have had full disclosure about it from your clients. Do you represent to the Court that there is no conflict in this matter?

"Mr. Hernandez: There is no conflict.

"The Court: Mr. and Mrs. Amaya, do you understand that you are both represented by the same attorney?

"Mr. Amaya: Yes.

"Mrs. Amaya: Yes.

"The Court: And if you are in conflict between the two of you as to who did what at what time, or anything like that, one of you is entitled to have another attorney. Do you understand what that means?

"Mrs. Amaya: Yes.

"Mr. Amaya: Yes.

"The Court: Are you both satisfied with being represented by Mr. Hernandez?

"Mr. Amaya: Yes.

"The Court: And you, Mrs. Amaya?

"Mrs. Amaya: Yes."

## A. *There Was No Apparent Conflict of Interest*

State criminal defendants are guaranteed by both the federal and state Constitutions "the assistance of counsel.[1] This right is to assistance of a lawyer "untrammeled and unimpaired" by the burden of representing "conflicting interests." (*Glasser* v. *United States* (1942) 315 U.S. 60, 70 [86 L.Ed. 680, 699, 62 S.Ct. 457]; *Holloway* v. *Arkansas* (1978) 435 U.S. 475, 482 [55 L.Ed.2d 426, 433, 98 S.Ct. 1173]; *People* v. *Chacon* (1968) 69 Cal.2d 765, 774 [73 Cal.Rptr. 10, 447 P.2d 106]; cf. *People* v. *Mroczko* (1983) 35 Cal.3d 86, 103, 105 [197 Cal.Rptr. 52, 672 P.2d 835]; Annot., Multiple Representation of Defendants in Criminal Case as Violative of Sixth Amendment Right to Counsel—Federal Cases, 64 L.Ed.2d 907; Annot., Circumstances Giving Rise to Conflict of Interest Between or Among Criminal Codefendants Precluding Representation by Same Counsel, 34 A.L.R.3d 470.) This is not to say multiple representation is necessarily ineffective. (*Cuyler* v. *Sullivan* (1980) 446 U.S. 335, 348 [64 L.Ed.2d 333, 346, 100 S.Ct. 1708].)

The United States Supreme Court has adopted a rule of automatic, or per se, reversal when a trial court has overruled a defendant's objection to joint representation. (*Holloway, supra,* 435 U.S. at p. 488 [55 L.Ed.2d at

---

[1] The Sixth Amendment to the federal Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." This right is part of the process due state citizens under the Fourteenth Amendment. (*Gideon* v. *Wainwright* (1963) 372 U.S. 335, 339 [9 L.Ed.2d 799, 802, 83 S.Ct. 792].) Article I, section 15, of the California Constitution provides: "The defendant in a criminal cause has the right . . . to have the assistance of counsel for the defendant's defense . . . ."

p. 437].) On the other hand, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." (*Cuyler, supra,* 446 U.S. at p. 348 [64 L.Ed.2d at pp. 346-347].) "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. [Citation.] But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." (*Cuyler, supra,* at pp. 349-350 [64 L.Ed.2d at p. 347].) The United States Supreme Court required defendants to identify an actual conflict although cognizant of the fact "in a case of joint representation of conflicting interests the evil— it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process." (Italics in original.) (*Holloway, supra,* 435 U.S. 475, 490 [55 L.Ed.2d 426, 438].)

■   The California Supreme Court has "applied a somewhat more rigorous standard of review. In a line of cases beginning with *People v. Chacon, supra,* 69 Cal.2d 765, 776, footnote 3, and continuing through *People v. Cook* (1975) 13 Cal.3d at pages 663, 670 . . . certiorari denied (1975) 423 U.S. 870 . . . and *Maxwell v. Superior Court* (1982) 30 Cal.3d 606, 612-613 . . . [it has] held—regardless of whether there was an objection— that even a potential conflict may require reversal if the record supports 'an informed speculation' that [defendant's] right to effective representation was prejudicially affected. Proof of an 'actual conflict' is not required." (*Mroczko, supra,* 35 Cal.3d 86, 104-105.)[2] California has adopted this more rigorous standard because "'[t]he very vice of joint representation lies in the possibility that the conflict gets swept under the rug.' [Citation.]" (*Mroczko, supra,* at p. 109, fn. 23.)

■   The conflict asserted by defendant here is that she and her husband accepted a package deal plea bargain involving identical sentences although the husband had a prior criminal record while the wife had none. We find these assertions unsupported by the record. Defendant and her husband did plead guilty at the same time to the same offense and thereafter received the same sentence, but there is no evidence of an actual or potential conflict in the record. Other than the allegations of defense counsel in the motion to strike, there is no evidence of a disparity of criminal record or complicity in the offense, or psychological suasion by husband of wife.

---

[2]We cannot discern the derivation of two separate standards of review, since the California cases do not appear grounded on the California Constitution imposing different requirements from the federal Constitution. (E.g., *Chacon, supra,* 69 Cal.2d 765, 773-774; *Mroczko, supra,* 35 Cal.3d 86, 103.)

It would be uninformed speculation to postulate the existence of these potential sources of a conflict in representation. Based on the evidence before the trial court, it is as likely there was no conflict or defendant received the greater benefit of the alleged plea bargain. We conclude defendant has failed to demonstrate a potential conflict even under the more rigorous standard of California law.

### B. *Defendant Waived Any Possible Conflict*

■  Assuming arguendo there was a potential conflict of interests between defendant and her husband in the 1979 case, we conclude defendant adequately waived it. The court did inquire into the subject of possible conflict as stated above and defendant stated she was satisfied with her counsel.

The United States Supreme Court has not spelled out the prerequisites for an adequate waiver of the right to separate counsel, although it has acknowledged the right might be waived after proper judicial inquiry. (*Glasser, supra,* 315 U.S. 60, 70-71 [86 L.Ed. 680, 699-700].) Judicial inquiry is appropriate when "the trial court knows or reasonably should know that a particular conflict exists . . . ." (*Cuyler, supra,* 446 U.S. 335, 347 [64 L.Ed.2d 333, 346].)

■  Although an appellate court indulges every reasonable presumption against a waiver (*Glasser, supra,* 315 U.S. at p. 70 [86 L.Ed. at p. 699]), it is ordinarily a factual question whether there was a waiver, limiting appellate review to a search for substantial evidence to support the trial court's determination, unless, as here, there is no conflict in the evidence, and a question of law is presented. (See *People* v. *Duren* (1973) 9 Cal.3d 218, 237-238 [107 Cal.Rptr. 157, 507 P.2d 1365].)

■  *Mroczko, supra,* 35 Cal.3d 86, relied on by defendant, details the prerequisites for an adequate waiver based on the opinions of lower federal courts. Judicial "inquiry is to be made directly of defendants to assure that they have been adequately apprised of the nature and consequences of any conflicts faced by counsel." (*Id.,* at p. 112.) "[W]aivers of constitutional rights must, of course, be 'knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.' [Citation.] No particular form of inquiry is required, but, at a minimum, the trial court must assure itself that (1) the defendant has discussed the potential drawbacks of joint representation with his attorney, or if he wishes, outside counsel, (2) that he has been made aware of the dangers and possible consequences of joint representation in his case, (3) that he knows of his right to conflict-free representation, and (4) that he voluntarily wishes to waive

that right. ([Citation]; *United States* v. *Dolan, supra,* 570 F.2d 1117, 1181-1183; [citations].)" (*Id.*, at p. 110.)

██  Before we apply this test, however, we observe the requirements of *Mroczko* are tied to a situation of court-appointed counsel. (*Id.*, at pp. 109, 115.) The retention of an attorney may alter the equation. In a lengthy footnote, *Mroczko, supra,* at page 110, footnote 26, commented: "The issue of when—or if—a trial court may disqualify joint counsel despite codefendants' expressed desires to continue with single counsel is a subject of much controversy in the federal courts and has yet to be considered directly by this court. In *Maxwell* v. *Superior Court,* we noted that although 'the mere possibility of a conflict does not warrant pretrial removal of competent counsel in a criminal case over defendant's informed objection,' (*id.*, at p. 619), '[w]e do not deprive the trial court of power to act when an actual conflict materializes during the proceedings, producing an obviously deficient performance. Then the court's power and duty to insure fairness and preserve the credibility of its judgments extends to recusal even when an informed defendant, for whatever reason, is cooperating in counsel's tactics.' (Citations, *id.*, at p. 619, fn. 10.) A number of federal courts have held that purported waivers may be rejected when actual conflicts are likely to arise whether counsel is appointed or retained. (E.g., *United States* v. *Dolan* (3d Cir. 1978) 570 F.2d 1117; [citations].) Recently enacted Federal Rules of Criminal Procedure, rule 44(c) is apparently in accord with this line of cases, and the advisory committee notes cite *Dolan* extensively. [Citation.] However, other federal courts have held that when counsel is retained, courts may not interfere with defendants' choice of counsel if a knowing and intelligent waiver can be obtained. [Citations.]"

There is obvious difficulty in reconciling this dictum with *People* v. *Cook* (1975) 13 Cal.3d 663 [119 Cal.Rptr. 500, 532 P.2d 148], relied on by the Attorney General. The court there considered the significance of private retention of counsel as to a claim of ineffective assistance by virtue of joint representation. The court stated at pages 671-672: "[I]t is extremely doubtful that defendants' right to retain counsel of their own choice could or should be challenged by the trial court.7" Footnote 7 explained: "An inquiry as to whether there were conflicting interests would seem particularly inappropriate in the instant case where the court was also the trier of fact. . . . We nevertheless believe that it would not be inappropriate for a trial court to indicate to codefendants represented by counsel jointly retained that if a conflict exists each might be better represented by separate counsel. Such admonishment following an inquiry as to whether defendants and their jointly retained counsel have considered the possible damaging effect of a potential conflict is highly recommended as appropriate trial court procedure."

*Cook* did not expressly talk in terms of waiver, but it did indicate joint retention of counsel constrained judicial inquiry into potential conflicts. *Maxwell, supra,* 30 Cal.3d 606, 620, footnote 12, commented on *Cook* as follows: "*Cook's* suggestion that judges may never interfere with a choice of conflicted counsel was dictum since the case concerned trial prejudice. Again the issue of waiver was not confronted. . . . [¶] With recent guidance from the United States Supreme Court we now reaffirm that judges need not inquire about conflicts affecting retained counsel unless, as here, the issue is raised by counsel or a party. . . ."

This comment in *Maxwell* is itself dictum as to multiple representation because the question there was whether an attorney who obtained a fee contract giving him the right to exploit his client's life story should be recused or if the potential conflicts were knowingly and intelligently waived. (An adequate waiver was found. (*Id.,* at p. 621.))

*Maxwell* does acknowledge that different concerns apply to establishing a waiver when counsel was retained by the defendant. Its discussion of waiver of potential conflicts when counsel obtains rights to client's life story is apropos. "In determining whether a waiver of potential conflicts is knowing, intelligent, and unconditional, the trial court must 'navigate adroitly between the Scylla of denying a defendant the right to determine his own fate and the Charybdis of violating his right to counsel. . . .' [Citation.] Some federal cases have implied that the court's inquiry must separately explore each foreseeable conflict and consequence and that defendant's waiver may extend only to matters discussed in detail on the record. ([Citation]; *United States* v. *Dolan, supra,* . . .) It also has been suggested that defendant must express in his own words his understanding of what he has been told. (*Dolan, supra,* at p. 1182; . . .) [¶] Rules that are that strict seem neither necessary nor workable." (*Id.,* at p. 621.)

Under any view, defendant's choice of counsel is not without significance in determining whether the defendant has accepted the risk of possible conflict. The trial court here made the inquiry and issued the admonition approved by *Cook*. The court further explained each was entitled to separate counsel, and ascertained each codefendant was aware of this right. The court did not solicit an express waiver, but then this hearing occurred some four and one-half years before *Mroczko* was handed down. In light of the speculative possibility of a conflict between codefendants' interests, we consider the trial court's inquiry to have been appropriate to the situation of retained counsel, and we conclude there was a knowing and intelligent waiver of joint counsel's possible conflicts.

As stated in *People* v. *Sanford* (1985) 174 Cal.App.3d 11, 19 [219 Cal.Rptr. 726]: "The waiver here is adequate under *Maxwell*. Defendants

said they had discussed the possible conflicts with their counsel. They were told they were entitled to separate counsel to fully protect their individual rights. . . . It was not error to fail to include the explicit and implied list of admonitions subsequently announced in *Mroczko.*"

IV*

*Castro Error Was Harmless*

. . . . . . . . . . . . . . . . . . . . . . . . .

V

The judgment is therefore affirmed.

Brauer, J., and Chang, J.,† concurred.

---

*See footnote, *ante*, page 1.

†Assigned by the Chairperson of the Judicial Council.