[No. F009270. Fifth Dist. May 15, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM H. OWEN et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of Part II.

**COUNSEL**

Kirk W. McAllister for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, J. Robert Jibson and Robert C. Miller, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PETTITT, J.\*—**

### STATEMENT OF THE CASE AND PROCEEDINGS BELOW

On September 24, 1985, Dr. Edmund Musset, an elderly resident of Tuolumne County, hired Mickie Owen, a private duty nurse, to care for him in his home for a few hours three days a week. (Dr. Musset was educated in Berlin and received a degree as a "Dr. of Science.") Dr. Musset's health progressively deteriorated from September through December of 1985. During the advanced stages of his illness, Mrs. Owen was required to care for him eight to ten hours a day, seven days a week. Mr. William H. Owen accompanied his wife and assisted her in her care of Dr. Musset. Dr. Musset was admitted to a hospital on December 29, 1985, and to its long-term care facility on December 31, 1985.

While there, he became a client of Marilyn Day, a social service worker with the Tuolumne County Welfare Department. Dr. Musset told Mrs. Day that many household items were missing from his residence, that his neighbors, the Hansens, had seen the Owens (appellants) removing items from his residence during his stay in the hospital, and that Mrs. Owen was overcharging him for her services.

On August 5, 1986, Tom Kaufmann, investigator with the Tuolumne County Sheriff's Office, after numerous requests and telephone calls from Marilyn Day, was issued a warrant to search the appellants' residence for the items Dr. Musset claimed appellants had removed from his residence. The warrant was served and the search was made on August 7, 1986. Several items of evidence were removed from appellants' residence by Officer Kaufman.

An information was filed on October 22, 1986, charging appellants with one count of grand theft of household items (count I), one count of grand theft of money (count II), and one count of receiving stolen property (count III). On November 4, 1986, appellants were arraigned in superior court, pleaded not guilty to all three counts and requested a jury trial. Appellants retained Steven G. Mikelich as their attorney. Said attorney was present and represented both appellants at the arraignment.

On April 21, 1987, the first day of jury selection, appellants' retained counsel moved for court appointment as counsel for both appellants. The motion was granted nunc pro tunc to April 1, 1987.

---

\*Retired judge of the superior court sitting under assignment by the Chairperson of th Judicial Council.

Neither at the arraignment nor at the time of appointment of said previously retained counsel, did the court enter into any discussion with appellants or their counsel regarding separate counsel for each appellant.

Counsel for appellants made no motion to suppress the evidence obtained from the search of appellants' residence on August 7, 1986.

On June 4, 1987, after a lengthy trial, the jury returned verdicts of guilty as to each appellant to a lesser offense of petty theft on count I; not guilty as to each appellant on count II; and guilty on count III, receiving stolen property. Count III was subsequently dismissed on July 27, 1987.

On August 31, 1987, the imposition of sentence was suspended as to both appellants and they were placed on probation for two years, ordered to pay fines and assessments totaling $503 each, and to serve 30 days in jail with consideration for work release. The jail time condition of probation was stayed pending appeal.

■ Appellants contend the court had a duty to warn them of the dangers of multiple representation and to obtain a waiver of their right to conflict-free representation. They also contend there were material misstatements and omissions in the search warrant affidavit which justify exclusion of all evidence obtained in the search. Furthermore, that the facts on which the warrant was issued were impermissibly stale, in their opinion. They contend they were denied effective assistance of counsel by counsel's failure to move to suppress the evidence obtained, as well as by reason of the multiple representation.

## DISCUSSION

*I. The Trial Court Was Not Required to Advise Appellants of the Dangers of Multiple Representation When Previously Retained Counsel Was Appointed.*

■ Where an attorney represents two or more defendants in a single action, a trial court, under certain circumstances, is required by law to inquire into the possibility of a conflict of interest. These circumstances include any situation where a trial court is aware of or should be aware of the possibility of a conflict of interest (*People* v. *Bonin* (1989) 47 Cal.3d 808, 836 [254 Cal.Rptr. 298, 765 P.2d 460]), and any situation where a trial court appoints counsel for indigent defendants (*People* v. *Mroczko* (1983) 35 Cal.3d 86, 109 [197 Cal.Rptr. 52, 672 P.2d 835]; *People* v. *Cook* (1975) 13 Cal.3d 663, 671 [119 Cal.Rptr. 500, 532 P.2d 148]). ■ A trial court is *not required* to inquire into the possibility of a conflict where two or more

defendants have retained counsel (*People* v. *Cook, supra,* 13 Cal.3d 663, 671) unless a conflict is reasonably apparent (*People* v. *Bonin, supra,* 47 Cal.3d 808, 835-836).

The duty of inquiry into potential conflicts of interest imposed on a criminal trial court is premised on a state and federal constitutional right to effective assistance of counsel. ■ "Included in the right to effective assistance of counsel is 'a correlative right to representation that is free from conflicts of interest.' (*Wood* v. *Georgia* [1981] 450 U.S. [261] at p. 271.)" (*People* v. *Bonin, supra,* 47 Cal.3d 808, 834.)

■ The general rule, stated in *Bonin,* is that if a "trial court knows, or reasonably should know, of the possibility of a conflict of interest on the part of defense counsel, it is required to make inquiry into the matter." (*Id.* at p. 836, citing *Wood* v. *Georgia* (1981) 450 U.S. 261, 272 [67 L.Ed.2d 220, 230, 101 S.Ct. 1097].) ■ This rule applies even where a defendant has retained his own counsel. (*Id.* at pp. 835-836.) ■ If the trial court is put on notice and knows or should know that the degree of risk of a conflict warrants action on its part,[1] it must bring the possibility of a conflict of interest to the attention of the defendants. The defendants may decide they each want their own independent counsel, or they may decide to continue with multiple representation. (*Id.* at p. 837.)

■ An exception to the general rule arises where a trial court appoints counsel for indigent defendants. When a trial court appoints counsel, the trial court is required to initially appoint separate independent counsel for each defendant, regardless of whether there is an apparent conflict of interest. This rule is set forth in *People* v. *Mroczko, supra,* 35 Cal.3d 86 115.[2]

If the defendants continue with multiple representation, through court-appointed counsel, "the trial court must assure itself that (1) the defendant

---

[1] The court in *Bonin* states "[t]he trial court is obligated not merely to inquire but also to act in response to what its inquiry discovers. [Citation.] In fulfilling its obligation, it may, of course, make arrangements for representation by conflict-free counsel. [ ] Conversely, it may decline to take any action at all if it determines that the risk of a conflict is too remote. [ ] In discharging its duty, it must act ' ". . . with a caution increasing in degree as the offenses dealt with increase in gravity." ' (*Glasser* v. *United States, supra,* 315 U.S. at p. 71)." (*People* v. *Bonin, supra,* 47 Cal.3d at pp. 836-837.) The *Bonin* case was a death penalty case involving multiple murders by a defendant who became notorious as the "Freeway Killer."

[2] The court in *People* v. *Mroczko, supra,* 35 Cal.3d 86, stated at page 115: "In hopes of solving this problem, we adopt as a judicially declared rule of criminal procedure . . . requiring that when the court undertakes to appoint counsel, it must initially select separate and independent counsel for each defendant 'with an instruction that if counsel conclude, after fully investigating the case and consulting with their clients, that the interests of justice and of the clients will best be served by joint representation, this conclusion with supporting reasons shall be communicated to the court for such on-the-record disposition as the court deems appropriate in the circumstances.' (*Ford* v. *United States* (D.C. Cir. 1967) 379 F.2d 123, 126.)"

has discussed the potential drawbacks of joint representation with his attorney, or if he wishes, outside counsel, (2) that he has been made aware of the dangers and possible consequences of joint representation in his case, (3) that he knows of his right to conflict-free representation, and (4) that he voluntarily wishes to waive that right." (*People* v. *Mroczko, supra,* 35 Cal.3d 86, 110.) The court is also required to advise the defendants that separate counsel may be appointed for each defendant and such counsel will be paid by the government if the defendants are unable to afford to retain their own independent counsel. (*People* v. *Sanford* (1985) 174 Cal.App.3d 11, 18 [219 Cal.Rptr. 726].)

■ However, where defendants have retained their own counsel, there is no exception to the general rule. (*People* v. *Cook, supra,* 13 Cal.3d 663, 671.) The only circumstance which would trigger the trial court's obligation to inquire into the possibility of a conflict in a retained-counsel situation is where the court knows or reasonably should know of the possibility of a conflict of interest. (*People* v. *Bonin, supra,* 47 Cal.3d 808, 836.)

On the other hand, the *Cook* court recommended that it would not be inappropriate for a trial court to indicate to codefendants represented by jointly retained counsel that if a conflict exists, each might be better represented by separate counsel. "Such admonishment following an inquiry as to whether defendants and their jointly retained counsel have considered the possible damaging effect of a potential conflict is highly recommended as appropriate trial court procedure." (*People* v. *Cook, supra,* 13 Cal.3d at p. 672, fn. 7.)

■ In the instant case, appellants were initially represented by counsel whom they retained themselves. On the first day of jury selection, the court declared appellants to be indigent and appointed appellants' retained counsel to represent them.

Nothing in the record supports a conclusion the court knew or should have known of an actual or a potential conflict of interest. Appellants claim a conflict arose because "a great amount of the testimony related to the theft of monies charge, which dealt almost exclusively with Mrs. Owen." Appellants have not established how their interests diverged on that matter, since the record indicates that Mr. Owen was just as involved in Dr. Musset's financial affairs as his wife. Mr. Owen testified that he often sat at the same table with his wife and Dr. Musset as bills were paid and checks were written.

Appellants further contend their interests diverged as to the many kinds of allegedly stolen items, i.e., "Mrs. Owen's lack of familiarity with the tools

and Mr. Owen's inability to identify doilies." Appellants failed to demonstrate how this fact resulted in their differential treatment.

The record indicates Mr. Owen accompanied his wife on many occasions during the time she cared for Dr. Musset, particularly during the month of December, the period of time in which many of the alleged events occurred. Further, the record indicates that Mr. Owen accompanied his wife on three visits to Dr. Musset's house after Dr. Musset was taken to the hospital. This was to close up the house, to clean out the refrigerator, and to return a hospital bed rented for Dr. Musset's use during November and December.

The record also indicates Mr. Owen actively assisted in the care of Dr. Musset. He also participated in the general care of the Musset house. The record further indicates the actions of Mr. and Mrs. Owen were so intertwined it was hard to separate the actions of one from the actions of the other. There is nothing in the record which would have alerted the trial court to even the possibility of a conflict of interest. Therefore, the trial court did not err in failing to inquire into the possibility of a conflict of interest.

The trial court was under no obligation to advise appellants concerning the dangers of multiple representation at the commencement of the proceedings since appellants had retained their own counsel. ▮ While there is dicta in the *Cook* case which "highly recommends" such action by the court, the court is not *required* to do so.

▮ However, when the court changed the status of counsel from retained to appointed, the *Mroczko* requirement that a trial court must initially appoint separate independent counsel must be considered.

The *Mroczko* court, however, qualified its rule in a footnote as follows: "Of course, experience cautions that every rule must have its qualifications and we assume that the one we have just announced is no exception. One can readily visualize situations in which rigid adherence to the 'one defendant one lawyer' principle would paralyze the system. Decisions on where the line should be drawn must, however, await the emergence of actual situations which call for appropriate limitations or modifications of the rule." (*People* v. *Mroczko, supra,* 35 Cal.3d 86, 115, fn. 32.)

Therefore, the issue here is whether the appellants who pleaded indigency on the first day of trial and requested appointment of their jointly retained counsel, can now complain that the court should have done something more than comply with their request. Part of the answer lies in whether rigid adherence to the rule in *Mroczko* "would paralyze the system." We con-

clude it would have done exactly that. The record reflects appellants had been represented by their retained counsel, Steven G. Mikelich, as far back as August 28, 1986. He represented them at their preliminary hearing on October 8, 1986, and continuously thereafter.

There is nothing in the record prior to the day jury selection began which indicates any difficulty because of jointly retained counsel, and appellants point to none. The victim was 86 years of age at the time of trial, and in poor health. A further delay in the trial date could have jeopardized the availability of the victim, a key witness for both the prosecution and the defense. If the trial court had appointed separate independent counsel, the much delayed trial would have suffered another substantial delay. This would be a hardship for all involved, including the judicial system. Such hardship would be repeated in similar situations where defendants become depleted of funds part way through a criminal proceeding, and request appointment of their currently retained counsel.

Under such circumstances it is reasonable and fair to find an exception to a rule requiring appointment of separate counsel who would know nothing about the long pending case. ▮ The court in *Mroczko* stated, " 'When a trial court undertakes to appoint counsel for indigent codefendants [citation], it must assume the burden of assuring that its appointment does not result in a denial of effective counsel because of some possible conflict.' [Citation.]" (*People* v. *Mroczko, supra,* 35 Cal.3d 86, 109.)

The situation in *Mroczko,* a death penalty case, did not involve the appointment of previously retained counsel.

▮ Where an attorney has been representing more than one defendant for a long period of time with no indication of ineffective representation, a court is not assuming the type of responsibility the trial court faced in *Mroczko.*

On the contrary, we have facts calling for the responsibility defined in *People* v. *Bonin, supra,* 47 Cal.3d at page 836, as quoted above. There the Supreme Court held a trial court is required to make inquiry when it knows, or reasonably should know, of the possibility of a conflict of interest on the part of defense counsel. In the instant case the trial court was not required to inquire and receive waivers by defendants of possible conflict of interest. Indeed, there is even some question as to whether it would have been inappropriate to do so. In *People* v. *Cook, supra,* 13 Cal.3d at pages 671-672, the court stated: "When a trial court undertakes to appoint counsel for indigent codefendants [citation], it must assume the burden . . . . On the other hand, when multiple defendants freely and voluntarily retain joint

counsel the court is not required to assume a similar burden. Indeed, it is extremely doubtful that defendants' right to retain counsel of their own choice could or should be challenged by the trial court. (See *United States* v. *Paz-Sierra* (2d Cir. 1966) 367 F.2d 930, 932.)" (Fn. omitted.) However, at this point the court made its "recommendation" in a footnote which is referred to above.

But failure to follow a recommendation does not necessarily constitute error. Under the facts of the instant case there is no error.

Appellants here must show that an actual conflict of interest existed and that the conflict adversely affected counsel's performance. (*People* v. *Bonin, supra,* 47 Cal.3d 808, 837-838, citing *Wood* v. *Georgia, supra,* 450 U.S. 261.) Appellants have failed to make such a showing.

*II. Appellants Failed to Show Counsel's Representation Was Deficient**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

CONCLUSION

Since we find trial counsel's representation of appellants was not deficient, we need not reach appellants' contentions regarding the content of the search warrant affidavit nor whether the information in it was stale.

The judgment is affirmed.

Best, Acting P. J., and Stone (W. A.), J., concurred.

---

*See footnote, *ante*, page 561.