[No. B004487. Second Dist., Div. Three. Oct. 14, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
RAUL ESCARCEGA, Defendant and Appellant.

## Counsel

Thomas F. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, William R. Weisman and John A. O'Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**DANIELSON, J.**—Defendant Raul Escarcega appeals from a judgment of conviction following a jury trial of violating Penal Code sections[1] 209 (kidnapping for robbery) and 211 robbery.[2]

· Defendant asserts that: (1) he was denied his right to a speedy trial under section 1382; and (2) he was denied his right to effective assistance of counsel (see *People* v. *Fosselman* (1983) 33 Cal.3d 572 [189 Cal.Rptr. 855, 659 P.2d 1144]).

From our review of the record we agree that defendant was denied his statutory right to a speedy trial but find that he was not prejudiced. We also conclude that defendant waived any claim of denial of effective assistance of counsel.

---

[1]All future references to "section" are to Penal Code.

[2]The jury also found to be true the allegation that defendant used a firearm during the commission of the first offense but not true the same allegation as to the latter. The jury further found to be true the alleged 1977 prior conviction of robbery and the alleged prior convictions of assault with intent to rape and voluntary manslaughter. However, the jury found not to be true the remaining prior conviction of robbery allegedly suffered by defendant in 1982.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 5, 1983, an information was filed charging defendant and co-defendant David Miranda Salazar with the violations of sections 209 and 211. It was further alleged that in the commission of each of these offenses a principal was armed with a handgun and that defendant personally used a handgun. Attorney Marvin Part was appointed to represent defendant. Defendant pleaded not guilty to both charges and denied the "armed" and "use" allegations. Trial was set for May 18, 1983.

On May 9, 1983, the information was amended to allege that defendant had suffered three prior felony convictions. On May 18, 1983, defendant was arraigned on the priors and denied them. When the matter was called for trial that date, Part announced that he was not ready, because he was engaged in another case and had been ordered to keep himself ready for that trial, and also he had not yet prepared defendant's case. He asked the court to appoint an investigator to assist him in that preparation. Part further informed the court that he had another case set for trial in Norwalk on June 15, 1983, and represented that Escarcega would waive "for any period of time." Trial was continued to May 31, 1983.

On May 31, 1983, the People announced ready. Part, however, represented that he was still trailing in one case and had another set to try after that. Trial was continued to August 15, 1983, and defendant waived time until 45 days thereafter.

On August 15, 1983, trial was continued to October 31, 1983, to accommodate attorney vacation problems. Defendant waived time to October 31.

On October 31, 1983, Penelope Watson, attorney for codefendant Miranda, appeared on Part's behalf. She stated that Part was not in court that day, because he was making an appearance in another case in Arizona, and upon Part's return he was scheduled to conduct a one-week trial in still another case. Defendant refused to be represented by Watson and for the first time objected to any further continuance. On its own motion the court trailed the matter to the following day.

On November 1, 1983, Part appeared and announced that he was not ready, because he was in the fifth day of trial in the "Lawrence" case. He represented, however, that he would be ready by November 15, 1983, "at the very latest." When asked if he would waive his right to a speedy trial, defendant replied "no."

The court told defendant that one option would be to relieve Part and appoint another attorney but rejected this option on the basis that such

substitution would probably entail a further continuance of about two months to allow new counsel to prepare for trial. Instead, the court found good cause to continue the trial to November 14th and ordered both defense counsel "not to become engaged in or announce ready on any matters that would interfere with this date."

On November 14, 1983, counsel for all parties announced ready, except Part, who stated that he was still engaged in the "Lawrence" case but would be through "by the 28th of November." Defendant again refused to waive his right to a speedy trial. The court found good cause to continue the matter to November 28, 1983. When the case was called for trial on November 28, Part appeared. Defendant requested that Attorney Antonio C. Sandoval, who was privately retained, be substituted in Part's place. Defendant's request was granted. Sandoval declared he was ready, but the court trailed the matter until November 30, 1983, without objection.

On November 30, 1983, trial was trailed to December 1, 1983, and again from that date to December 5, 1983, from December 5 to December 6, 1983, and finally from December 6 to December 7, 1983.

On December 7, 1983, prior to commencement of trial, the court conducted a hearing concerning various pretrial motions, including defendant's motions under sections 995 and 1538.5, which were filed without supporting memoranda of points and authorities. Sandoval explained that the points and authorities were not finished and then admitted that he had not served these motions on other counsel. He presented no evidence in support of the section 1538.5 motion. The court denied both motions. The court also denied Sandoval's oral motion to dismiss or limit the alleged prior convictions, which defendant had denied, but granted Sandoval's motion for a separate trial on those priors.

Also on that date the prosecution filed a memorandum of points and authorities in anticipation of a motion by Sandoval to strike or limit the use of an uncharged prior conviction in 1981 for kidnap for the purpose of rape. The prosecutor indicated that he intended to introduce evidence in his case-in-chief of such prior. Sandoval did not in fact make such a motion and made no argument against the admission of such evidence. After noting the absence of such argument, codefendant Miranda moved to sever his trial from defendant's. Sandoval did not oppose the severance. Instead, he handed a subpoena prepared by him to compel Miranda to be a witness for defendant. The court questioned the purpose of the subpoena advising Sandoval that Miranda had a Fifth Amendment right not to be a witness. Sandoval responded that he was going to talk to him and see if he was available. He

also stated that Miranda would have to talk to him "as an adverse witness to my client, even if he vindicates [*sic*] my client's rights."

The court then called counsel into chambers and conducted an inquiry based on the court's concern that Sandoval might be too inexperienced to try a serious felony of this nature. Sandoval stated that he had tried only four criminal cases, including only one felony case, in his two to three years as an attorney. He admitted that he had not been prepared and was not making all the proper procedural motions. Sandoval, however, insisted that he wanted to try the case, but would inform his client of the court's inquiry and let his client make the decision.

Upon resuming the bench the court permitted Sandoval to confer privately with his client and then informed defendant, on the record, that Sandoval was "probably a very good lawyer in other areas of the law" but the court had "serious doubts as to whether or not he is able to take on a case of the complexity and seriousness of yours." The court then informed defendant that he could either keep his present attorney, or if he wanted, the court would appoint him another. Defendant stated, on two separate occasions, that he wanted to proceed with Sandoval.

The next morning the court again inquired whether defendant wanted to proceed with Sandoval and admonished him that "if in fact you have been convicted you will not be able to claim ineffective counsel at the time of appeal." Defendant answered in the affirmative when asked by the court if he understood this. He also twice answered in the affirmative when the court asked if knowing this to be so, defendant wanted to proceed with his counsel, Sandoval. The court then granted the codefendant's motion to sever.

Defendant then proceeded to trial with Sandoval as his counsel. The jury subsequently found defendant guilty as charged with violating sections 209 and 211 and found the three alleged prior convictions and the "use" allegation with regard to the section 209 offense to be true.

DISCUSSION

*Defendant Was Not Prejudiced by Denial of a Speedy Trial*

It is clear from our review of the record that defendant expressly or impliedly agreed to all postponements of his trial until October 31, 1983, when, for the first time, he objected to any further delay. Defendant was therefore required to be brought to trial within 10 days thereafter, i.e., November 10, unless he consented to subsequent delays or unless the court

found good cause to continue the matter beyond that time period. (§ 1382, subd. 2.)

Defendant specifically objected to the postponements from October 31, 1983 to November 1, 1983,[3] and from November 1, 1983 to November 14, 1983, and from November 14, 1983 to November 28, 1983. Although the court was within its discretion to postpone trial until November 10, 1983, any delay thereafter could only be justified upon a showing that defendant consented to such delay or that good cause existed for such delay.

■ On the record before us we find that there was no justification for the delay from November 10 to November 28, 1983, about two and one-half weeks. The sole reason for such delay was the congested calendar of Part, defendant's appointed counsel. In the absence of "extraordinary circumstances" such explanation for delay cannot constitute a sufficient excuse.

It is established that "[a] defendant's right to a speedy trial may be denied simply by the failure of the state to provide enough . . . public defenders or appointed counsel, so that an indigent must choose between the right to a speedy trial and the right to representation by competent counsel." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 571 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

"A defendant deserves not only capable counsel, but counsel who, barring exceptional circumstances, can defend him without infringing upon his right to a speedy trial. Thus the state cannot rely upon the obligations which an appointed counsel owes to other clients to excuse its denial of a speedy trial to the instant defendant." (*Id.,* at p. 572.)

"In summary, calendar conflict by appointed counsel does not permit counsel to waive defendant's rights under section 1382 over his client's express objection; likewise calendar conflict on the part of defense counsel or the trial court cannot routinely serve to justify denial of a motion to dismiss when trial is postponed beyond the statutory period." (*Id.,* at p. 575.)[4]

---

[3]This objection was without any legal significance inasmuch as the continuance to November 1, 1983, was within the 10-day grace period. It should be noted that defendant was in custody at all relevant times.

[4]We reject the People's contention, which is supported by neither substantive argument nor authority, that the desires of the People and codefendant to avoid needless duplication or to obtain an expeditious disposition are relevant factors in determining whether defendant's right to a speedy trial was violated. (See, e.g., *People* v. *Ham* (1970) 7 Cal.App.3d 768, 783 [86 Cal.Rptr. 906].) The law is in fact to the contrary. The preference for a joint trial of jointly charged defendants does not constitute good cause to delay one defendant's trial beyond the time period set forth in Penal Code section 1382, subdivision 2. (*Sanchez* v. *Superior Court* (1982) 131 Cal.App.3d 884, 893 [182 Cal.Rptr. 703].)

Although the court determined that it was not beneficial to appoint new counsel, the court failed to discharge its duty to "inquire into whether the delay is attributable to the fault or neglect of the state," i.e., by failing to provide sufficient facilities and personnel needed to implement the right to a speedy trial. (*Id.*, at pp. 571, 572-573.)

Additionally, the record is barren of any indicia of "extraordinary circumstances" which would justify delay due to appointed counsel's congested calendar. (Cf. *Eshaghian* v. *Municipal Court* (1985) 168 Cal.App.3d 1070, 1079 [214 Cal.Rptr. 712].) "The term 'exceptional circumstance' has not been expressly defined." (*Arreola* v. *Municipal Court* (1983) 139 Cal.App.3d 108, 114 [188 Cal.Rptr. 529]; *Gomez* v. *Municipal Court* (1985) 169 Cal.App.3d 425, 433, fn. 9 [215 Cal.Rptr. 206].) At a minimum, however, the definition of that term envisions an unforeseeable, unique, or nonrecurring event or situation. (*Ibid.*) Such facts are not present here.

Our inquiry, however, does not terminate with our finding that defendant's statutory right to a speedy trial was abridged. Whether such abridgment necessitates reversal of defendant's conviction turns on the presence or absence of prejudice flowing from such delay.

On this requirement our Supreme Court in *People* v. *Johnson, supra,* 26 Cal.3d 557, announced: "[w]e stated in *Wilson* that if a defendant seeks pretrial relief, he is 'not required to affirmatively show that he [has] been prejudiced by delay.' (*Id.*, at p. 151; see *Scherling* v. *Superior Court* (1978) 22 Cal.3d 493, 504 [149 Cal.Rptr. 957, 585 P.2d 219].) Upon appellate review following conviction, however, a defendant who seeks to predicate reversal of a conviction upon denial of his right to speedy trial must show that the delay caused prejudice: this court, in reviewing the judgment of conviction, must 'weigh the effect of the delay in bringing defendant to trial or the fairness of the subsequent trial itself.' (60 Cal.2d at p. 151.) Because defendant in *Wilson* failed to show that he was 'in any way prejudiced by the setting of his trial for a date approximately two months beyond the last day to which he had consented,' we concluded that the asserted errors did not warrant reversal of defendant's conviction, and affirmed the judgment. (*Id.*, at p. 154.) [¶] In the present case the record shows no prejudice to defendant arising from the delay. This is not a case in which the statute of limitations would have been a bar to new charges, or one in which a dismissal would itself have barred refiling. Defendant does not assert that the delay actually prejudiced his defense. Indeed, defendant by his silence on this issue essentially concedes the absence of prejudice, urging that we overrule *Wilson* and reverse his conviction without proof of prejudice. [¶] We adhere, however, to the reasoning and holding in *Wilson.*" (*Id.*, at p. 574.)

In the present case, defendant contends that the prejudice flowing from the unjustified delay "produced a terrible result—using the limited resources of his family to hire an inexpensive (and correspondingly inexperienced) attorney who 'promised them the moon.'" He asserts that he hired Sandoval as (1) the result of his "lost confidence in the court's ability or desire to protect his constitutional rights," as evidenced by the court's repeatedly ignoring his pleas for a speedy trial and (2) "the stress induced by months of delay while he was incarcerated." He concludes by arguing that Sandoval "singlehandedly destroyed any chance [he] may have had to achieve a more beneficial result."

■ We disagree with defendant's claim that he was prejudiced by the delay in question. The purported nexus between the delay and the claimed prejudice is so attenuated as to be nonexistent. On November 28, 1983, the date when the attorney substitution took place, Part was present when the matter was called for trial. There is no indication that he was not ready, i.e., that he was trailing or in trial on some other case or unprepared for trial in the present case. The record, instead, reflects that defendant unilaterally, without specifying any reason for dissatisfaction with Part, chose to substitute Sandoval, who admitted to having tried only one felony case, in place of Part, who is an experienced criminal attorney. Moreover, defendant, even after being fully advised of Sandoval's apparent shortcomings, chose to proceed with Sandoval despite several offers by the court to appoint new counsel. It is therefore clear that any prejudice flowing to defendant from his representation by Sandoval was the result of defendant's own informed choice, not the delay in question.

*Defendant Insisted Upon Being Represented by Retained Counsel of His Own Choice and Cannot Claim Inadequacy of Counsel*

■ We also disagree with defendant's position that he did not waive the issue of ineffectual counsel.[5] In relevant part the record reveals the following colloquy:

"THE COURT: The record will reflect we are in chambers. . . .

"What I'm about to say is not easy.

". . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: . . . . . . . . . . . . . . . . . . .

"May I ask you, sir, how long you have been a member of the bar.

---

[5]Defendant asserts that he was deprived of his right to effective counsel in that the court failed timely to replace Part with new counsel. We do not reach this issue for the reason that it is in the context of his claim of denial of a speedy trial, not the context of an ineffectual counsel claim, that the court's duty to appoint new counsel must be resolved.

"MR. SANDOVAL [Defense counsel]: Several years, two or three years.

"THE COURT: How many criminal cases have you tried?

"MR. SANDOVAL: Four.

"THE COURT: How many felonies have you tried?

"MR. SANDOVAL: One.

"THE COURT: Okay.

"Sir, it's my opinion, based upon what I have seen today—

"MR. SANDOVAL: Yeah.

"THE COURT: —that I really think you're out of your element in trying a case this serious.

"I don't think you know the rules of procedure well enough—let me finish—in that you're making a serious mistake in proceeding with this trial.

"I further want you to know that several things have been said on the record already that I think probably lays the basis for making an assertion that you are ineffective.

"Now, I gather your primary business is probably in the area of civil litigation as opposed to criminal.

"MR. SANDOVAL: Yes.

"THE COURT: And I'm sure that you're probably effective in the civil area. I would caution you, sir, that under Business and Professions Code 6086.7, should your client be convicted and should the case then be reversed because you weren't effective—

"MR. SANDOVAL: Right.

"THE COURT: —the State Bar has to look at your license.

"MR. SANDOVAL: That is no problem. It's all right. I appreciate what you have done.

"What if I win the case? My client is acquitted? Do I get a medal?

"THE COURT: No.

"MR. SANDOVAL: Okay, Your Honor.

"You know the problem with this case; you're right. I have not been prepared. The last—in terms of a—all the motions that should have been made.

"But given the time that I have had, I have concentrated especially on trying the case. I am not making all the proper procedural motions. I will welcome the Bar to come and look at my Bar—or whatever they want to wish and there will be other counsels that will have to answer with me.

"THE COURT: All right.

"MR. SANDOVAL: Basically that is my position and I want to try this case.

"THE COURT: All right. Okay.

"MR. SANDOVAL: I appreciate your concern, Your Honor, and perhaps during the course of the trial, you change your mind in terms of the professionalism that I will display.

"THE COURT: I hope so, sir.

"MR. SEMOW [Deputy District Attorney]: May I ask a question, sir?

"THE COURT: Yes, sir.

"MR. SEMOW: The court having voiced this concern—

"THE COURT: I can still give everybody a fair trial. Is that what your concern is?

"MR. SEMOW: Not at all. I spent too many trials in here to have any question about that.

"My question is whether or not the court feels that in order to protect the record the concerns that the court has just voiced now should at some point prior to commencement of this trial be voiced directly to the defendant in open court so that he can make, what the record may already reflect, is an informed decision as to go ahead but has never been expressly so voiced by him.

"In other words, Judge George did inquire regarding these matters in open court in the presence of the defendant but the defendant was never asked expressly how he felt about that inquiry.

"MR. SANDOVAL: May I make a comment, Your Honor?

"THE COURT: Yes, sir.

"MR. SANDOVAL: With regards to my competency, I will advise my client what has taken place here and urge him to make a decision on that point so in case he decides that I shall drop off the case or continue this case so I can better prepare, I will still let him make that decision.

"This is—this is my position all through the trial. I mean, I don't think I'm advising the court of anything new.

"THE COURT: Okay.

"I think I'd better do it on the record and let him choose.

"MR. SANDOVAL: No problem.

". . . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: The record will reflect we're back in open court. The defendant Mr. Escarcega is present; . . .

"MR. SANDOVAL: Your Honor, may I have half a minute to explain before the court does?

"THE COURT: Yes. [A conference was held between counsel and his client, not reported.]

". . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: Mr. Escarcega, I have indicated to Mr. Sandoval that based upon what I have seen in court this afternoon, some of the answers to the questions I've received, that although I feel he's probably a very good lawyer in other areas of the law, particularly in the civil area which is his primary service, I do not feel or I have serious doubts as to whether or not he is able to take on a case of the complexity and the seriousness of yours.

"And I based that in part on the answers I have received. In fact he's been practicing three years and he only had four trials, only one of which was a felony.

"However, it is your choice, sir. He is your lawyer. And if you wish to proceed with him, we will go ahead and proceed.

"If you have a serious—if you feel that you would want other counsel and cannot afford other counsel, the court is prepared to go ahead and appoint you private counsel. However it must be your choice.

"DEFENDANT ESCARCEGA: Uh-huh.

"THE COURT: Now, do you wish to proceed with Mr. Sandoval?

"DEFENDANT ESCARCEGA: Yes.

"THE COURT: All right.

"MR. SANDOVAL: May I advise my client maybe he should reserve that until tomorrow. Could we continue and could you leave that open so he can think about it?

"THE COURT: All right.

"Do you want overnight? You want to think about it overnight?

"DEFENDANT ESCARCEGA: What I don't get is, you know—

"MR. SANDOVAL: Excuse me. Just say Yes or No.

"DEFENDANT ESCARCEGA: I just want to say something.

"THE COURT: Go ahead.

"DEFENDANT ESCARCEGA: Okay.

"I've been here, you know, nine months.

"THE COURT: I'm aware of that.

"DEFENDANT ESCARCEGA: And my other lawyer, you know, we're supposed to be ready for jury trial about—it's already gone about four months now.

"And he told me we was going to be ready. And when we went to court they said they were going to be ready and now all of a sudden they said they ain't, and my lawyer kept coming on with excuses he wasn't ready.

"So he postponed it until the next two weeks after and then he comes out again. He said at that time he was trailing and then they postponed it another two weeks; and he said, he tried to come out with another excuse and said he was still trailing.

"I don't see how you could trail for almost a month, you know, and I've been ready to go and I've been telling him and I don't know what they've been waiting for.

"THE COURT: Okay.

"I can understand nobody likes sitting in county jail but you are facing a life top on this; is that right?

"DEFENDANT ESCARCEGA: On what?

"THE COURT: The 209. Isn't it a life top?

"MR. SANDOVAL: He's aware of that, Your Honor.

"They offered him nine years.

"THE COURT: Let me just check. [A conference was held between counsel and his client, not reported.]

"THE COURT: You're facing the possibility of life; and if these priors are true, you could be going up with life and three priors.

"And so I don't know what the Board policy is at this particular time; but I doubt, seriously doubt that you'd be getting out in seven years.

"DEFENDANT ESCARCEGA: What?

"THE COURT: I don't know what the Board of Prison Terms policy is at this particular time; but if you go up on a life term, I wouldn't expect that you would get out at the minimum which is seven or five years.

"Counsel, are you aware of what it is?

"MR. SEMOW: It is seven, Your Honor. For a life sentence without prior enhancements. There is an interesting legal issue at this time as to whether or not the 15-year enhancements could actually be used to enhance the minimum parole eligibility date.

"The Court: So we're talking about a lot of time.

"So maybe if your concern is that you're not going to get to trial tomorrow or the next day, as I said before, if you cannot afford counsel, I am willing to appoint you counsel.

"I will assure you that it is very competent counsel and I will guarantee you you will get to trial as soon as he is ready and prepared which shouldn't be that long.

"It may mean another 30 to 60 days in county jail and I know you don't particularly like that. However, when you balance 30 or 60 with the possibility of losing the rest of your life, I think you should maybe think about it seriously.

"Defendant Escarcega: But I figure if I didn't do nothing wrong, I think I'd rather go to trial.

"The Court: By all means then you need someone who is fairly effective.

"Mr. Sandoval: Your Honor, I think we're effective as far as trying the case.

"The Court: Yes.

"So think it over and let me know tomorrow morning. Okay?

"Defendant Escarcega: Well, what do you want to know?

"The Court: I want to know whether you want to proceed with Mr. Sandoval or whether you wish to have him relieved and have me appoint you a new counsel if you can't afford counsel.

"Defendant Escarcega: Well then, so I could be having the same problems like I was having with the other lawyer?

"The Court: I doubt it.

"I'll just make sure that you do not have those problems.

"If I appoint somebody, it will be with the understanding that he is to be ready and it will be one trial date and he's to be ready to go at that time.

"DEFENDANT ESCARCEGA: Could I say something?

"Like all right. Like my prior—

"THE COURT: Don't start talking about the priors at this particular time, because of the fact we're on the record and I don't want any question to arise about anything you said here being used against you.

"DEFENDANT ESCARCEGA: Uh-huh.

"MR. SANDOVAL: Your Honor, there is an interesting issue also here with regards to the Board.

"THE COURT: Well, I'm not concerned with the Board; I'm concerned with the life sentence he's facing and the question that I've raised today.

"MR. SANDOVAL: I'm concerned about getting my client acquitted before Christmas and have it come to a conclusion.

"THE COURT: Did you understand everything I said, sir?

"DEFENDANT ESCARCEGA: Yes. I am still going to stay with my lawyer.

"THE COURT: All right.

"This case will be in recess until tomorrow morning at 10 o'clock. [10:00 A.M., Thursday, December 8, 1983]

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: . . . . . . . . . . . . . . . . . . . . .

"Back on the record on People vs. Escarcega and Miranda, case No. A388628.

"Mr. Escarcega, have you had all night to think about our discussion yesterday.

"DEFENDANT ESCARCEGA: Uh-huh.

"THE COURT: You realize, of course, sir, that if in fact you have been convicted you will not be able to claim ineffective counsel at the time of appeal?

"DEFENDANT ESCARCEGA: I see.

"THE COURT: Do you understand that?

"DEFENDANT ESCARCEGA: Yes, sir.

"THE COURT: Knowing that, you wish to proceed with your counsel?

"DEFENDANT ESCARCEGA: Yes, sir.

"THE COURT: And you wish to go ahead with Mr. Sandoval?

"DEFENDANT ESCARCEGA: Yes, sir."

From the foregoing colloquy we find that substantial evidence supports the trial court's implied finding that defendant's waiver of effective counsel was made voluntarily, intelligently, and knowingly. (See *Winton* v. *Municipal Court* (1975) 48 Cal.App.3d 228, 236-237 [121 Cal.Rptr. 561]; cf. *People* v. *Shelley* (1984) 156 Cal.App.3d 521, 532-533 [202 Cal.Rptr. 874].)

■ We reject defendant's contention that there can be no valid waiver in the absence of an express finding. We find factually distinguishable those cases which hold that the court must make an express finding on the record that defendant voluntarily, intelligently, and knowingly waived his right to counsel. In such cases the record was either silent or unclear with regard to the nature and scope of the court's inquiry and defendant's responses concerning the issue of waiver or reflected an inadequate inquiry by the court. (See, e.g., *In re Johnson* (1965) 62 Cal.2d 325, 334-335 [42 Cal.Rptr. 228, 398 P.2d 420]; *People* v. *McGraw* (1981) 119 Cal.App.3d 582, 597 [174 Cal.Rptr. 711]; *People* v. *Miller* (1979) 89 Cal.App.3d Supp. 14, 15-16 [152 Cal.Rptr. 707].[6]) The rationale behind the requirement of an express, on-the-record finding of waiver in such instances is the mandate that every reasonable presumption against waiver of the right to counsel must be indulged since it is impermissible to presume such waiver from mere acquiescence. (*Johnson* v. *Zerbst* (1938) 304 U.S. 458, 464-465 [82 L.Ed. 1461, 1466-1467, 58 S.Ct. 1019, 146 A.L.R. 357]; *Benge* v. *Superior Court* (1980) 110 Cal.App.3d 121, 126 [167 Cal.Rptr. 714].)

Where, as here, however, the record is unambiguous and reveals a fulsome inquiry by the court, including advisements and admonishments over a two-

[6]We point out that these cases essentially involved a lack of representation by counsel while the present case involves a claim of ineffectual representation. Although these issues are not identical, they both fall within the scope of the right to counsel.

day period, and unequivocal responses by defendant which evince a knowing, intelligent, and voluntary waiver of the right to effective assistance of counsel, then the rationale for requiring an express finding of waiver by the court does not apply, and the general appellate rule of implying all findings in support of the judgment which are supported by substantial evidence suffices. In other words, an express finding is not mandated where the record fully sets forth the colloquy between the court and defendant concerning the issue of waiver and substantial evidence exists to support an implied finding of waiver.

Specifically, the record in the present case reveals that defendant clearly chose to proceed to trial with Sandoval as his attorney with his eyes open, i.e., with full knowledge and understanding of the ramifications and consequences of his choice. Moreover, the court gave defendant several opportunities to consider and reconsider his decision, and to have new counsel appointed; however, defendant remained determined to be represented by Sandoval.[7]

 It was not within the province of the court to substitute new counsel over defendant's unwavering objection. "'It is the duty of a court to afford counsel to the indigent. But this duty ceases when counsel is retained by a defendant. The court must then keep hands off and permit counsel to control the case within the embrace of his right to do so.' [Citation.]" (*Ingram* v. *Justice Court* (1968) 69 Cal.2d 832, 840 [73 Cal.Rptr. 410, 447 P.2d 650, 36 A.L.R.3d 1391].) Implicit in the constitutional right to counsel is the right to representation by retained counsel of one's choice. (*People* v. *Crovedi* (1966) 65 Cal.2d 199, 206 [53 Cal.Rptr. 284, 417 P.2d 868].) "[Al]though it is clear that a defendant has no *absolute* right to be represented by a particular attorney, still the courts should make all reasonable efforts to ensure that a defendant financially able to retain an attorney of his own choosing can be represented by that attorney. [Citation.]" (*Id.*, at p. 207; fn. omitted; italics in original.) Moreover, "the state should keep to a necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best, using any legitimate means within his resources—and that that desire can constitutionally be forced to yield only when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case." (*Id.*, at p. 208.)

"Despite that concern with 'significant prejudice' [our Supreme Court] has stressed that the judge's finding of potential incompetence or conflict

---

[7]We also point out that defendant is not a novice to the criminal justice system. He had in fact suffered three prior felony convictions.

usually does not justify court-ordered removal." (*Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606, 614 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333].) "Indeed, it is extremely doubtful that defendants' right to retain counsel of their own choice could or should be challenged by the trial court. [Citation.]" (*People* v. *Cook* (1975) 13 Cal.3d 663, 671-672 [119 Cal.Rptr. 500, 532 P.2d 148]; fn. omitted; cited with approval in *Maxwell* v. *Superior Court, supra,* 30 Cal.3d at p. 615; but see *Maxwell, supra,* at p. 620, fn. 12; *People* v. *Amaya* (1986) 180 Cal.App.3d 1, 8-11 [225 Cal.Rptr. 313].)

"[I]t is the duty of the trial judge to protect the defendant's right to a counsel who is *effective*. But in discharging that duty the judge must be on his guard neither to infringe upon the defendant's right to counsel of his choice, nor to compromise the independence of the bar." (*Smith* v. *Superior Court* (1968) 68 Cal.2d 547, 559 [68 Cal.Rptr. 1, 440 P.2d 65]; italics in original.)

In *Smith* our Supreme Court addressed the issue of whether a trial judge possesses an inherent power to remove counsel on the ground of his "subjective opinion that counsel is 'incompetent' because of ignorance of the law to try the particular case before him." (*Ibid.*) The *Smith* court concluded that "the constitutional guarantee of the defendant's right to counsel requires that his advocate, whether retained or appointed, be free in all cases of the threat that he may be summarily relieved as 'incompetent' by the very trial judge he is duty-bound to attempt to convince of the rightness of his client's cause." (*Id.,* at p. 562.)

In reaching this conclusion the *Smith* court began by observing "that the admission of an attorney to the bar establishes that the State deems him competent to undertake the practice of law before all our courts, in all types of actions. If that appraisal turns out to be erroneous, we are the only court having jurisdiction to take direct action." (*Id.,* at pp. 559-560, fn. omitted.) The *Smith* court then explained: "Even so, we cannot exclude an attorney from participating in a particular case or field of practice; our power is limited to ordering his disbarment or suspension . . . ." (*Id.,* at p. 560, fn. 5.)

The *Smith* court, however, pointed out: "[t]his does not mean, of course, that a trial judge is powerless when it appears to him that a defense counsel is making serious mistakes to his client's prejudice. At that point the judge may intervene, at least within reasonable limits, by disallowing pleas or motions to withdraw pleas, controlling the scope of examination, questioning witnesses himself, making appropriate suggestions as to the items or order of proof, commenting on the evidence, admonishing or

instructing the jury on his own motion, or exercising any of his other inherent powers over the conduct of the proceedings to insure that the defendant receives a fair trial. (See *Cooper* v. *Superior Court* (1961) 55 Cal.2d 291, 301 . . . and cases cited.) Nothing we say here is meant to cast doubt on this practice. [¶] The judge's ultimate weapon, if counsel persists in rejecting such guidance in a contemptuous or insolent manner, is to invoke the summary contempt power. Yet that power too must be exercised with great caution, lest it stifle the freedom of thought and speech so necessary to a fair trial under our adversary system. . . . [¶] The outright removal of counsel on the ground of his alleged 'incompetency,' however, is even more of a threat to the independence of the bar than is arbitrary misuse of the contempt power." (*Smith* v. *Superior Court, supra,* 68 Cal.2d at pp. 560-561.)

Additionally, where the trial court is concerned about the competency of defendant's retained counsel it would not be inappropriate for the court to convey its concern to defendant and counsel and to inquire whether defendant understands the court's admonishments and, if so, whether defendant wants to proceed with that particular attorney.[8] (See, e.g., *People* v. *Cook, supra,* 13 Cal.3d 663, 672, fn. 7.)

In the present case the trial court not only conducted such an inquiry but also offered to appoint new, competent counsel to represent defendant, which offer defendant declined.

 A defendant cannot be heard on appeal to complain of his counsel's inadequacy or ineffectiveness at trial if defendant is advised by the court of possible problems concerning that attorney's competence and he knowingly, intelligently, and voluntarily chooses to proceed with that particular attorney. A contrary rule would impermissibly allow a defendant "an automatic right to reversal on appeal should the defense or defenses at trial fail." (*People* v. *Cook, supra,* 13 Cal.3d at p. 673, fn. 10.)

Defendant, therefore, has waived any right he may have had to complain concerning the adequacy of his representation by Sandoval. (See, e.g., *People* v. *Brownlee* (1977) 74 Cal.App.3d 921, 933-934 [141 Cal.Rptr. 685]; *People* v. *Spencer* (1984) 153 Cal.App.3d 931, 940-941 [200 Cal.Rptr. 693]; cf. *Smith* v. *Superior Court, supra,* 68 Cal.2d 547, 559 [court, on its own motion, may relieve counsel who "exhibits objective evidence of *physical incapacity* to proceed with a meaningful defense of his client, such as illness, intoxication, or a nervous breakdown . . . ." (italics in original)].)

---

[8]However, where no such inquiry is conducted, the issue of ineffectual counsel is reserved for appeal from a judgment of conviction or for habeas corpus, which are the usual contexts for addressing that issue. (See, e.g., *People* v. *Fosselman, supra,* 33 Cal.3d 572, 581, 582, 584.)

The judgment is affirmed.

Klein, P. J., and Herrington, J.,* concurred.

A petition for a rehearing was denied November 13, 1986, and appellant's petition for review by the Supreme Court was denied February 5, 1987.

---

*Assigned by the Chairperson of the Judicial Council.