[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part n. of the Discussion.
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 352 
OPINION
 INTRODUCTION The joint trial of defendants and appellants Michael Jerome Sutton and Willie J. Jackson began six days after the statutory deadline in Penal Code section 1382.[1] Over Sutton's objections, the trial court continued the trial solely because Jackson's trial counsel was engaged in trial on another matter. On appeal, Sutton contends that the unavailability of his codefendant's trial counsel did not constitute good cause to continue the trial beyond the statutory deadline. We agree, and, in the published portion of this opinion, we hold that the six-day delay violated Sutton's statutory right to a speedy trial. Because Sutton was prejudiced by the delay, the judgment against him must *Page 353 
be reversed. In the nonpublished portion of this opinion, we hold that the exclusion of certain evidence to impeach a police officer's testimony was not prejudicial error. We therefore affirm the judgment as to Jackson.
 FACTUAL AND PROCEDURAL BACKGROUND I. Factual background. On May 31, 2006, Officer Anthony Jackson, a member of the narcotics division buy team, was working undercover at 7th and Ceres in Los Angeles. Defendant Jackson was counting money on Ceres. The officer looked at defendant Jackson, who approached the officer and asked what he wanted. The officer said he wanted "a 20," meaning $20 worth of narcotics. Defendant Jackson said he had to get it; he crossed the street to a waist-high camping tent, where Sutton was waiting.
 Sutton and defendant Jackson talked, although the officer could not over-hear their conversation. Sutton opened a white bottle out of which he poured an off-white solid substance into his hand and gave it to defendant Jackson. Defendant Jackson walked back to the officer and asked him for the money. The officer gave defendant Jackson a prerecorded $20 bill, and defendant Jackson gave the officer an off-white solid substance resembling rock cocaine. As he walked away, the officer signaled to his partners that the buy was complete.
 Jackson was arrested. Officers recovered $14 from his pants pockets. Sutton was arrested. Officers recovered an off-white substance resembling rock cocaine, a white canister also containing an off-white substance resembling cocaine, and $44 from him. Detective Vip Kanchanamongkol, who was in charge of the operation, compared a $20 bill recovered from Sutton to the prerecorded bill Officer Jackson used to buy the drugs from defendant Jackson. The bills matched. Testing confirmed that the substance Officer Jackson bought was 0.33 grams of cocaine base and that the substance recovered from Sutton was 0.99 grams of cocaine base.
II. Procedural background.
 Trial was by jury. On October 5, 2006, the jury found Sutton and Jackson guilty of count 1, sale of a controlled substance, cocaine base (Health Saf. *Page 354 
Code, § 11352, subd. (a)). The jury also found Sutton guilty of count 2, possession for sale of a controlled substance, cocaine base (Health 
Saf. Code, § 11351.5).
 On October 24, 2006, the trial court sentenced Jackson to the midterm of four years on count 1.
 On November 21, 2006, the trial court sentenced Sutton to the upper term of five years on count 1. The court imposed an additional three years under Health and Safety Code section 11370, subdivision (a), based on a prior felony conviction for violating Health and Safety Code section 11351.5 and an additional year under Penal Code section 667.5, subdivision (b). The court sentenced him to a concurrent four-year term on count 2. The court dismissed one prior conviction from 1990.
 DISCUSSION I. The six-day delay violated Sutton's statutory right to a speedytrial.[2]
 Because his trial was delayed beyond the statutory deadline in section 1382, Sutton contends his right to a speedy trial was violated.[3] We agree.
 A. Additional facts.
 The People filed a felony complaint on June 2, 2006, charging Jackson and Sutton with sale of a controlled substance (Health Saf. Code, § 11352, subd. (a)) and charging Sutton with sale of cocaine base (Health Saf. Code, § 11351.5). On June 16, noting that it was "10 of 10" and that defendants had been inadvertently sent to the wrong courthouse, the trial court dismissed the matter. Sutton was released from custody, but was placed in custody again three days later.
 By a felony complaint, the People refiled the matter on June 19, 2006. An information was filed on July 21, 2006, charging Sutton and Jackson again *Page 355 
with violating Health and Safety Code section 11352, subdivision (a), and Sutton with violating Health and Safety Code section 11351.5. Sutton and Jackson were arraigned that same day, July 21, and trial was scheduled for September 11, as day 52 of 60. The trial date, however, was vacated and set for September 12, as day 53 of 60. On September 12, all parties announced ready for trial, although Jackson's counsel said he might be engaged in trial on another case. The case was transferred to department 100 for trial assignment on September 15, as day 56 of 60.
 On September 15, 2006, Jackson's counsel said he was engaged in trial, but he would be available on the 19th. The trial court asked Jackson if it was "agreeable with you that you come back here on September 19th and have your trial within two days of that date?" Jackson said, "As long as no time is being waived," to which the court replied, "That's fine." The court trailed the matter to September 18, as day 59 of 60.
 On September 18, 2006, all parties announced ready, except for Jackson's counsel, who was still engaged in trial. On Jackson's continuing motion to trail, the court trailed the trial to September 19. The court noted that there was no time waiver from either defendant.
 On September 19, 2006, day 60 of 60, Jackson's counsel said he was still engaged in trial. The court again noted that defendants were not waiving time, but it found good cause to continue the matter as to both defendants.
 The next day, September 20, day 61 of 60, Jackson's counsel was still in trial but he nevertheless made "a pro forma" motion to dismiss. The court said it was not a good faith motion to dismiss because he was also making a motion to continue.[4] The court again found good cause to continue the matter based on Jackson's counsel being in trial.
 The following day, September 21, Jackson's counsel was still engaged in trial. The trial court again found good cause to trail the case until September 22. Sutton asked if this meant he waived time. The court said, "You haven't waived one second. I find good cause because one of the two counsel are engaged in trial, which is good cause to trail the case." *Page 356 
 On September 22, 2006, Jackson's counsel asked to trail the matter to the 25th, because he was still engaged in trial. The trial court granted the motion, and it found that there was no time waiver. Sutton personally addressed the court:
 "Defendant Sutton: I'm confused.
 "The court. What are you confused about, Mr. Sutton?
 "Defendant Sutton: I'm told you have 60 days to start trial. Sixty days was up yesterday, and we've not waived any time. The minute order —
 "The court: That's excellent. And I found good cause to put your case over.
 "Defendant Sutton: What's the good cause? What's the good cause?
 "The court: The good cause is that one of the lawyers is engaged and can't try two cases at one time. And if one of the lawyers is engaged on a case with two defendants, it's good cause to put both over, [¶] Now do you want a further explanation than that?
 "Defendant Sutton: Yeah, but the minute order show we never waived any time. I'm confused.
 "The court: You're not confused. You just don't like it.
 "Defendant Sutton: Well, that's a fact.
 "The court: That's a fact, [¶] And you know what my answer to you is? Too bad. See you on Monday."
 On September 25, 2006, all parties announced ready for trial, and the case was transferred to department 124 for trial. Noting that it was day 66 of 60 and that his client never waived time, Sutton's counsel cited, among others, People v. Escarcega (1986) 186 Cal.App.3d 379
[230 Cal.Rptr. 638] (Escarcega), and moved for dismissal based on the lack of a speedy trial. The People responded, "The People have answered ready since the first day this *Page 357 
case was in Department 100. It is my recollection on each and every occasion when defense counsel for Mr. Sutton was asked if he wanted to waive time for the convenience or because his cocounsel was in fact in trial he did. In light of that fact and in light of the fact the People have been ready each and everyday, the People would oppose the motion."
 Sutton's counsel corrected the district attorney: "I never waived time. I emphasized on the record that Mr. Sutton did not want to waive time. The court was aware of that. That is why they brought Mr. Sutton everyday from a week ago, over a week ago, on a daily basis in case a trial court opened up. It was over our decision not to waive time. We did not waive time." The court said good cause to trail the case had been found because cocounsel was engaged in another matter, and it therefore denied the motion.[5]
 B. The preference for a joint trial does not here trump defendant'sright to a speedy trial.
 The California Constitution guarantees a criminal defendant's right to a "speedy public trial." (Cal. Const., art. 1, § 15; see also Pen. Code, § 1050.)[6] Section 1382 interprets the state constitutional right to a speedy trial. (People v. Johnson (1980) 26 Cal.3d 557, 561
[162 Cal.Rptr. 431, 606 P.2d 738] (Johnson); People v. Martinez (2000) 22 Cal.4th 750,766 [94 Cal.Rptr.2d 381, 996 P.2d 32] [the statutory speedy trial rights are supplementary to and a construction of the state constitutional speedy trial guarantee].) It provides that absent a showing of good cause, waiver or consent, a defendant accused of a felony is entitled to a dismissal of charges if the matter is not brought to trial within 60 days of arraignment. (§ 1382; Johnson, at p. 563.) What constitutes good cause to continue a case depends on the *Page 358 
circumstances of each case, and the issue is reviewed on appeal under an abuse of discretion standard. Johnson, at p. 570; Hollis v. SuperiorCourt (1985) 165 Cal.App.3d 642, 645 [211 Cal.Rptr. 649].)
 The measure of good cause, however, is "imprecise." (Greenberger v.Superior Court (1990) 219 Cal.App.3d 487, 502 [267 Cal.Rptr. 849] (Greenberger), citing Barker v. Wingo (1972) 407 U.S. 514, 521
[33 L.Ed.2d 101, 92 S.Ct. 2182].) Notwithstanding the imprecision in defining good cause, our California Supreme Court has given at least one example of what does not constitute good cause: A counsel's calendar conflicts do not constitute good cause to continue a trial beyond the statutory deadline when the defendant expressly objects. (Johnson, supra,26 Cal.3d at p. 575.) In Johnson, the defendant's counsel, over his client's objection, asked for a continuance of trial because he was engaged in trial on other matters. After several continuances had been granted, the defendant was finally brought to trial 144 days after the information was filed. (Id. at p. 565.) The court found that in the case of an incarcerated defendant the public defender's inability to try a case within the statutory time because of conflicting obligations does not constitute good cause to avoid dismissal of the charges.[7] (Johnson, at pp. 561-562.)
 Courts of appeal have extended Johnson's holding to the context before us: whether the interest in jointly trying defendants charged with the same crimes can outweigh a defendant's speedy trial right. In Sanchez v.Superior Court (1982) 131 Cal.App.3d 884, 887 [182 Cal.Rptr. 703] (Sanchez), the court considered the preference for a joint trial. That preference is in section 1098, which provides that when "two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order[s] separate trials." The trial court in Sanchez refused to grant the defendant's motion to dismiss when, over his objections, trial was continued beyond the statutory period on the ground that counsel for a jointly charged codefendant was engaged in other criminal trials.[8]
The Court of Appeal said that "on balance, whatever unspecified `interests of justice' might be promoted by a joint trial in the underlying prosecution, the state interest cannot be permitted to subordinate the conflicting right of [a defendant] to a trial within the 60-day period." (Sanchez, at p. 893.) The court felt that this conclusion was compelled by Johnson's holding that the state cannot deny a defendant the right to a speedy trial merely because the state is unable to provide counsel who can bring it to trial within the *Page 359 
statutory limits. Thus, considerations of judicial economy and convenience underlying section 1098 "cannot subordinate the defendant's state constitutional right to a speedy trial without a showing of exceptional circumstances." (Sanchez, at p. 893.)
 We relied on Sanchez in Escarcega, supra, 186 Cal.App.3d at page 386, footnote 4, to reject the People's contention that their and the codefendants' desire "to avoid needless duplication or to obtain an expeditious disposition are relevant factors in determining whether defendant's right to a speedy trial was violated." We said that the "preference for a joint trial of jointly charged defendants does not constitute good cause to delay one defendant's trial beyond the time period set forth in Penal Code section 1382, subdivision 2." (See alsoArroyo v. Superior Court (2004) 119 Cal.App.4th 460, 466
[14 Cal.Rptr.3d 462] (Arroyo) [where there were "absolutely no facts presented to the trial court and hence no weighing by the trial court of the facts and competing interests" and where joinder was the sole basis for delay of trial, defendant's right to a speedy trial was violated].)
 Although Sanchez, Escarcega, and Arroyo support Sutton's argument that the preference for a joint trial under section 1098 does not trump his right to a speedy trial under section 1382, other cases support the contrary position. For example, our California Supreme Court has noted that where "a continuance is granted upon good cause to a codefendant the rights of the other defendants are generally not deemed to have been prejudiced." (People v. Teale (1965) 63 Cal.2d 178, 186
[45 Cal.Rptr. 729, 404 P.2d 209] [continuance premised on codefendant's counsel's need to prepare for trial], revd. on other grounds by Chapman v. California
(1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].) Teale cited with approval Ferenz v. Superior Court (1942) 53 Cal.App.2d 639 [128 P.2d 48], which found that the unavailability of two defendants was good cause to continue for 22 days the joint trial of nine defendants in a complex trial.
 Similarly, Greenberger held that the preference for joint trials can constitute good cause to delay a trial beyond the statutory time. (Greenberger, supra, 219 Cal.App.3d 487.) Greenberger was a multidefendant murder trial in which defendant Greenberger refused to waive time, although her codefendants moved to continue trial based on a need for pretrial investigation. Greenberger was ultimately tried six months beyond the statutory time. The court recognized that the preference for a joint trial "encompasses varied and significant interests. So significant, in fact, that they may serve as counter-weights to a defendant's right to confront witnesses [citation], his privilege against self-incrimination [citation], his right to exclude prejudicial character evidence [citation], and others [citations]." (Id.
at p. 499.) The court then said that "if the precipitating cause for trial delay is justifiable, such as codefendants' need to adequately prepare for trial, then the section 1098 joint trial *Page 360 
mandate constitutes good cause to delay the trial of an objecting codefendant." (Id. at p. 501, fn. omitted.) The court found that although there are "no magic calipers marking the exact reach of good cause delay," good cause existed based on a consideration of factors including length of delay, seriousness of charges, complexity of the case, prejudice to the defendant, the reason for the delay, witness hardship, and burden on the courts. (Id. at pp. 502, 505-506; see also Hollis v.Superior Court, supra, 165 Cal.App.3d 642 [defendant's right to a speedy trial was not violated by a continuance of 100 days past the statutory time based on codefendant's assertion he needed more time to prepare for trial].)
 We distill from these cases the guiding principle that the preference for a joint trial under section 1098 can, under certain circumstances, constitute good cause to continue a trial beyond the statutory time.Sanchez articulated this principle when it said, "[N]either a defendant's constitutional right to trial within the 60-day period nor the mandate for joint trial are absolute, but are subject to the discretion of the trial court in evaluation of conflicting policy and pragmatic considerations." (Sanchez, supra, 131 Cal.App.3d at p. 891.)[9]
 Applying that principle here, we conclude that Sutton's statutory right to a speedy trial was violated. Sutton never waived time. The sole reason counsel and the trial court gave to continue trial was the unavailability of codefendant Jackson's counsel; hence, the justification for continuing trial rested squarely on the preference for a joint trial. That preference, however, has been found to outweigh a defendant's speedy trial rights when the record reveals additional considerations weighing in favor of a joint trial, for example, the trial involves multiple defendants or a codefendant needs additional time to investigate or to secure witnesses. (See, e.g., Greenberger, supra,219 Cal.App.3d 487; Hollis v. Superior Court, supra, 165 Cal.App.3d 642.) No such considerations were present in this case. There were two defendants, but the case was a relatively straightforward and simple one involving 10 witnesses (including defendants) with one counsel estimating three days to try the case. Under these circumstances, the six-day delay violated section 1382.
 Having concluded that Sutton's speedy trial rights were violated, we now consider whether he was prejudiced by the violation. (People v.Martinez, supra, 22 Cal.4th at p. 769 [once a defendant has been tried and convicted, a defendant asserting that his or her statutory speedy trial rights were violated must show prejudice].) A defendant can show prejudice if the action has been *Page 361 
before dismissed. (Johnson, supra, 26 Cal.3d at p. 574 [prejudice can be shown if the statute of limitations would have been a bar to new charges or if a dismissal would itself have barred refiling].)
 Specifically, section 1387 provides, "An order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense if it is a felony or if it is a misdemeanor charged together with a felony and the action has been previously terminated pursuant to this chapter, or Section 859b, 861, 871, or 995. . . ." (§ 1387, subd. (a).)[10] This case was once dismissed, apparently under section 859b, for failure to hold the preliminary hearing within 10 days. If the trial court had thereafter again dismissed the case under section 1382 due to the violation of Sutton's speedy trial rights, further prosecution of the drug crimes would have been barred under section 1387.[11] We therefore conclude that Sutton has established he was prejudiced by the violation of his right to a speedy trial, and we reverse the judgment as to him.[12]
 In so concluding, we are not insensible of the burden separate trials of jointly charged defendants places on our courts. It is tempting to say, "It was only six days." At the same time, we cannot be insensible to what six days means to the incarcerated defendant awaiting trial. Under the circumstances here, to affirm the trial court's decision is to say the preference for a joint trial outweighs the value of those six days. Perhaps Johnson does not preclude that conclusion, but we cannot make it on this record.
 II. Cross-examination of Officer Hector Diaz.*
 The trial court excluded video evidence defendants proffered to impeach Officer Hector Diaz's testimony that he saw the entire transaction between defendants and Officer Jackson. Both defendants contend that the evidence was erroneously excluded, and that they were prejudiced by its exclusion. Jackson, whose trial counsel did not join in the objections to the exclusion of the evidence, argues that his counsel provided ineffective assistance of counsel for failing to do so. We hold that the trial court did not abuse its discretion by excluding the evidence, and therefore, Jackson's ineffective assistance of counsel claim must also fail.
A. Additional facts.
 During the transaction, Officer Diaz was the "point" officer — the officer who keeps his eyes on the undercover officer conducting the buy and who relays information to other officers in the area. He was standing on the south sidewalk of 7th in the middle of Ceres, and he testified he had a direct view of Officer Jackson the entire time Officer Jackson was on Ceres. He saw defendant Jackson approach Officer Jackson and talk to him. Officer Diaz also saw Sutton give something to defendant Jackson, who then gave it to Officer Jackson. After Officer Jackson walked away, Officer Diaz saw defendant Jackson walk back to Sutton and give him something.
 During cross-examination, Sutton's defense counsel asked Officer Diaz if he was involved in Davon Spencer's arrest on December 15, 2005. The prosecutor objected, and, at sidebar, defense counsel explained that he was going into the unrelated incident for impeachment purposes. Officer Diaz filed a report in the Spencer case stating he saw the transaction there, but a DVD showed that "if you are standing on either corner [of 7th and Main], you could not see the transaction because there is a bus in the way." Defense counsel said that the camera was on a telephone pole, which, the trial court noted, gave the camera a different vantage point than any officer on the ground. The following discussion took place:
 "Mr. White: [The bus] pulled up, stopped and either let people off or on. It is a Santa Monica bus. This was the time that Mr. Spencer was alleged to have been doing something, but the bus was in the way. You can see the top of Mr. Spencer's head.
 "The court: If I were to allow this, I have to allow you to play the DVD. We are going to get into a case that has no other connection with this case; is that correct?
 "Mr. White: That's correct, Your Honor. The only connection is that the officer is in a similar situation where he is testifying. Here he is in a position where he could see. In this report it says that he could see when he couldn't have seen what he saw on another case. I am using it for impeachment only.
 "The court: Under [Evidence Code section] 352 I am not going to allow it at this time. If later on it appears that this witness' testimony is pivotal, then I will reconsider your offer to recall him. At this point, I can't see any purpose. I can see a lot of time being consumed. I do not want to conduct a trial within a trial. Obviously, at that point you have to let the people bring in other witnesses who may have seen and can corroborate what the witness said he saw. [¶] I don't know that a DVD from a different vantage point is at all probative. We'd have to get into all of that. No, I am not going to permit it at this time. [¶] He may retake the stand and you may get into a different line of questioning.
 "Mr. White: I will, Your Honor. I do want to point out this is important to Mr. Sutton to be able to impeach this officer —
 "The court: I understand. That is why I said to you down the road in this trial if this should become a pivotal witness, we will revisit. I can see a lot of time being consumed and I am exercising my discretion under [section] 352 of the Evidence Code.
 "Mr. White: Under due process and the federal constitution, Mr. Sutton should be allowed to use it."
 Later, after the People rested, the trial court stood by its tentative ruling and reiterated that Officer Diaz was not a primary witness, rather, he testified briefly to corroborate Officer Jackson's testimony.
 B. The trial court did not abuse its discretion in excluding theevidence.
 Sutton and Jackson contend that the exclusion of the above evidence violated their constitutional rights to a fair trial and to present a defense. (See, e.g., U.S. Const. 5th, 6th, 14th Amends.; Crane v.Kentucky (1986) 476 U.S. 683, 690 [the federal Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense]; United States v. Owens (1988) 484 U.S. 554, 558 [the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose infirmities through cross-examination, thereby calling to the fact finder's attention reasons for giving scant weight to a witness's testimony].) We disagree.
 "A defendant has the general right to offer a defense through the testimony of his or her witnesses [citation], but a state court's application of ordinary rules of evidence — including the rule stated in Evidence Code section 352 — generally does not infringe upon this right [citations]." (People v. Cornwell (2005) 37 Cal.4th 50, 82.) Although the United States Supreme Court, in Chambers v. Mississippi (1973)410 U.S. 284, 302-303, "determined that the combination of state rules resulting in the exclusion of crucial defense evidence constituted a denial of due process under the unusual circumstances of the case before it, it did not question `the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures.' [Citation.]" (Cornwell, at p. 82.)
 Certainly, evidence of misconduct on the part of a prosecution witness "may suggest a willingness to lie [citations], and this inference is not limited to conduct which resulted in a felony conviction." (People v.Wheeler (1992) 4 Cal.4th 284, 295-296.) But the "admissibility of any past misconduct for impeachment is limited at the outset by the relevance requirement of moral turpitude. Beyond this, the latitude section 352 allows for exclusion of impeachment evidence in individual cases is broad. The statute empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues." (Id. at p. 296, fn. omitted.)
 On appeal, we review the exclusion of evidence under Evidence Code section 352 for abuse of discretion. (People v. Holloway (2004)33 Cal.4th 96, 134.) We will not disturb a trial court's decision to exclude evidence under Evidence Code section 352 absent a showing that the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (People v.Rodrigues (1994) 8 Cal.4th 1060, 1124-1125.)
 Here, the trial court precluded cross-examination of Officer Diaz into whether he lied in the Davon Spencer case. The trial court cited undue consumption of time, lack of probative value, and that Officer Diaz was not a "pivotal" witness to justify excluding the evidence. Defendants take issue with the cited justifications.
 First, they argue that the evidence need not have been time consuming. They argue that playing the DVD would probably not have taken long and that it may even have been unnecessary to play it if Officer Diaz conceded he lied at Davon Spencer's trial. It is possible that Officer Diaz would have made such a concession, even if unlikely. In any event, there is no record of how long it would take to play the DVD. Even if playing the DVD itself would not have taken long, its admission undoubtedly would have required other witnesses from Davon Spencer's trial to be called to corroborate what Officer Diaz said he saw. This would have, as the trial court feared, created a "trial within a trial."
 Second, defendants argue that the evidence was highly probative because of the similarity between their case and Davon Spencer's. Thus, if defense counsel could establish that Officer Diaz lied in Spencer's case, then Diaz's credibility in this case would be undercut. But, as the trial court pointed out, defense counsel represented that the camera filming the Davon Spencer transaction was on a pole; thus, the DVD was filmed from a different vantage point than the one Officer Diaz had on the street. To establish that the camera had a better vantage point than did Officer Diaz and that the officer could not have seen the transaction would have required introduction of other evidence regarding, for example, where the officer was standing, where Davon Spencer was standing, the specific time of the transaction, and the specific time the bus came and went.
 Finally, defendants argue that Officer Diaz was a pivotal witness. They argue that only Officer Diaz's testimony corroborated Officer Jackson's testimony concerning the transaction between him and defendants. That is not accurate. Detective Kanchanamongkol, although he did not witness the transaction, recovered the prerecorded $20 bill from Jackson after he was arrested. Drugs and a white bottle or container as described by Officer Jackson were recovered from Sutton. This evidence corroborated the incident as related by Officer Jackson, even in the absence of Officer Diaz's testimony.
 We conclude that the trial court did not abuse its discretion by excluding the DVD evidence. Because we so conclude, Jackson's claim that his trial counsel was ineffective for failing to join in Sutton's objection to the exclusion of the evidence fails, because Jackson was not prejudiced by any failure on the part of his counsel. (Strickland v.Washington (1984) 466 U.S. 668, 694 [a defendant claiming ineffective assistance of counsel must also show by a preponderance of evidence "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome"].) *Page 362 
 DISPOSITION The judgment is reversed as to Michael Jerome Sutton. The judgment is affirmed as to Willie J. Jackson.
 Klein, P. J., and Kitching, J., concurred.
[1] All further undesignated statutory references are to the Penal Code.
[2] Jackson joins any contentions Sutton raises that may be "applicable and beneficial" to him. But at oral argument on this matter, Jackson's appellate counsel clarified that this contention is inapplicable to Jackson.
[3] Sutton's argument is based solely on section 1382. He does alternatively contend his trial counsel rendered ineffective assistance of counsel by, among other things, failing to object to continuing trial.
[4] Sutton's counsel was not present for this portion of the proceedings. He had called and said he would be late.
[5] Although the prosecutor said that Sutton had waived time and various minute orders state he waived time, the record is clear he did not. The People properly do not argue on appeal that there was such a waiver.
[6] Section 1050, subdivision (a), provides, "The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time. To this end, the Legislature finds that the criminal courts are becoming increasingly congested with resulting adverse consequences to the welfare of the people and the defendant. Excessive continuances contribute substantially to this congestion and cause substantial hardship to victims and other witnesses. Continuances also lead to longer periods of presentence confinement for those defendants in custody and the concomitant overcrowding and increased expenses of local jails. It is therefore recognized that the people, the defendant, and the victims and other witnesses have the right to an expeditious disposition, and to that end it shall be the duty of all courts and judicial officers and of all counsel, both for the prosecution and the defense, to expedite these proceedings to the greatest degree that is consistent with the ends of justice. . . ."
[7] The court also held that counsel may not waive his or her client's right to a speedy trial when the client objects to a waiver. (Johnson, supra,26 Cal.3d at pp. 561-562.) There was no waiver here, either by Sutton or by his trial counsel.
[8] The record is not clear how far past the statutory deadline trial occurred, but it appears it was somewhere between seven and 21 days. (Sanchez, supra, 131 Cal.App.3d at p. 888.)
[9] Escarcega could be interpreted as finding that the preference for a joint trial does not, under any circumstance, constitute good cause to continue a trial past the statutory time. Such an interpretation would be "overly broad." (Greenberger, supra, 219 Cal.App.3d at p. 495.)
[10] Section 1387, subdivision (a), further provides that such an order is a bar "except in those felony cases, or those cases where a misdemeanor is charged with a felony, where subsequent to the dismissal of the felony or misdemeanor the judge or magistrate finds any of the following: [¶] (1) That substantial new evidence has been discovered by the prosecution which would not have been known through the exercise of due diligence at, or prior to, the time of termination of the action, [¶] (2) That the termination of the action was the result of the direct intimidation of a material witness, as shown by a preponderance of the evidence. [1] (3) That the termination of the action was the result of the failure to appear by the complaining witness, who had been personally subpoenaed in a prosecution arising under subdivision (e) of Section 243 or Section 262, 273.5, or 273.6. This paragraph shall apply only within six months of the original dismissal of the action, and may be invoked only once in each action. Nothing in this section shall preclude a defendant from being eligible for diversion."
[11] The Attorney General merely notes that Sutton must show prejudice. The Attorney General fails to offer any substantive argument why Sutton was not prejudiced.
[12] Because we reverse this matter as to Sutton on the ground his right to a speedy trial was violated, we need not address his remaining contentions.
* See footnote, ante, page 350. *Page 363